## No. 13,413.

VALLEY STATE BANK *v.* DEAN ET AL.

(47 P. [2d] 924)

Decided July 1, 1935.   Rehearing denied July 22, 1935.

Mr. ALLYN COLE, for plaintiff in error.

Mr. SAMUEL YAGGY, for defendants in error.

*In Department.*

MR. CHIEF JUSTICE BUTLER delivered the opinion of the court.

THE Valley State Bank, of Syracuse, Kansas, sued J. B. Dean, Mary Dean individually and as administratrix of the estate of Sam M. Dean, deceased, Evangeline Dean and Mary Frances Dean to foreclose an equitable lien upon certain land in Baca county. The defendants joined in an answer in which they resisted the plaintiff's claim, and, by way of counterclaim, sought to have title to the land quieted in the defendant J. B. Dean. The judgment went against the plaintiff and quieted title in J. B. Dean.

J. B. Dean and Sam M. Dean were brothers. They made an exchange of land whereby the land in question, standing in the name of J. B., was to go to Sam. Sam

drew up the deed and, presumably because there were unsatisfied judgments against him, inserted the name of his wife, Mary, as grantee. J. B., his wife joining, executed the deed in December, 1927. Sam took the deed. He was indebted to the plaintiff in the sum of $500. He left the deed, unrecorded, with the plaintiff to secure the payment of his existing and future indebtedness. He partly erased the name of the grantee and authorized the plaintiff, in case of default, to complete the erasure and insert its own name as grantee and record the deed. Thereafter, on April 1, 1929, J. B. and Mary, Sam participating, made an arrangement for the exchange of the Baca county land for land in Morton county, Kansas, owned by J. B. Pursuant to such arrangement, J. B., his wife joining, conveyed the Morton county land to Mary; but as the deed to the Baca county land theretofore given by J. B. to Mary was not recorded and as J. B. had continued in possession of that land, the parties seem to have considered a reconveyance thereof unnecessary; at any rate, the Baca county land was not reconveyed to J. B. At that time J. B. did not know that Sam had left the unrecorded deed with the plaintiff as security. Sam's indebtedness to the plaintiff increased until, on April 30, 1930, it amounted to $2,000. He gave to the plaintiff his promissory note for that amount. He failed to pay the note at maturity, and thereupon the plaintiff, pursuant to the instructions previously given by Sam, completed the erasure, inserted its name as grantee and on June 10, 1933, filed the deed for record. After the change was made but before the recording of the deed Sam died, leaving his widow, Mary Dean, and his two children, Evangeline Dean and Mary Frances Dean, as his sole heirs. His widow was appointed administratrix of his estate.

The plaintiff contends that it has an equitable lien upon the Baca county land to secure the payment of Sam's promissory note and is entitled to have a foreclosure thereof. The defendants deny that the plaintiff has any lien upon the land, and jointly contend that the alteration

of the deed to the Baca county land made the deed void and that, the deed being void, title remained in J. B. Presumably because there had been an exchange of that land for J. B. Dean's Morton county land, and, pursuant to the agreement, the Morton county land had been conveyed to her, Mary makes no claim to the Baca county land, but insists that J. B. is the owner thereof.

1. It is said by counsel for the defendants that the alteration of the deed rendered it null and void. The law is thus stated in 1 R. C. L., p. 990: "It is a well-established rule that any material alteration in a written instrument, after the execution thereof, made either directly or indirectly by one claiming a benefit under it, without the consent of the party sought to be charged thereon, will render the instrument void as to the latter, even in the hands of an innocent holder, *so far as relates to the executory provisions thereof.*" (Italics are ours.)

But the deed in question not only was executed, but was delivered. Upon its delivery, the legal title to the land passed to and vested in Mary, and the alteration of the deed did not divest her of her legal title or vest it in J. B. Even the destruction or redelivery of the deed, whether the deed was recorded or unrecorded, would not have that effect. 8 R. C. L. p. 1022; Note, L. R. A. 1917E, p. 817.

2. The entire consideration for the Baca county land was given by Sam. For his own convenience, he had it conveyed to his wife, Mary. Where a person purchases land with his own money or gives his own property in exchange for other land and takes a conveyance thereof in the name of another, a resulting trust generally arises in his favor; the beneficial interest or estate follows the consideration and inures to the person from whom the consideration comes and the grantee becomes his trustee. *Lipscomb v. Nichols,* 6 Colo. 290; *Warren v. Adams,* 19 Colo. 515, 36 Pac. 604. We have decided other cases to the same effect, but the principle is so firmly established that further citation is unnecessary. Where, however, a

husband pays the consideration and causes the convey-
ance to be made to his wife, there is a presumption that
he intended it as a gift or advancement; but such pre-
sumption is overcome where evidence that is strong and
convincing shows that a gift or advancement was not in-
tended, in which case a resulting trust arises in favor of
the husband. *Davis v. Davis*, 18 Colo. 66, 31 Pac. 499;
*Rowe v. Johnson*, 33 Colo. 469, 81 Pac. 268; *Cortez Land
and Securities Co. v. Stabler*, 84 Colo. 64, 268 Pac. 526;
*Hines v. Baker*, 89 Colo. 1, 299 Pac. 5; *Botkin v. Pyle*, 91
Colo. 221, 14 P. (2d) 187. In the case at bar, as we have
seen, Sam furnished the consideration; took title in his
wife's name, presumably because of the existence of un-
satisfied judgments against him; took the deed and
pledged it to the plaintiff to secure the payment of his
personal debts; partly erased the name of the grantee
and authorized the plaintiff to complete the erasure and
insert its own name as grantee and record the deed in
case of default; participated in the exchange of the land
for land in Morton county; and at no time did the wife go
into possession of the Baca county land. The evidence,
it seems to us, strongly and convincingly negatives any
intent on the part of Sam to make a gift or advancement
of the property to his wife. Therefore a resulting trust
arose in his favor. Mary held the bare legal title as trus-
tee for Sam, who at all times was the sole beneficial owner
of the property. The property was subject to levy and
sale under execution against him. *Herrick v. Woodrow-
Shindler Co.*, 75 Colo. 363, 226 Pac. 137. And that would
be so even if, in taking title in his wife's name, Sam were
attempting to hinder and defeat his creditors, in which
event he himself could not enforce the trust.

3. While Sam was the sole beneficial owner of
the property, he left the deed with the plaintiff as secur-
ity for his personal debt. Of course, the erasure of the
grantee's name in the deed and the substitution of the
plaintiff's name did not divest Mary of her legal title or
invest the plaintiff therewith. Transfers of legal titles

cannot be made in that manner. It is clear, however, that Sam intended to charge his interest in the property with his debt to the plaintiff. The circumstances were such as to raise an equitable lien in favor of the plaintiff. In *Fallon v. Worthington,* 13 Colo. 559, 568, 22 Pac. 960, we quoted with approval the following statement in 1 Jones, Liens, section 27: "An equitable lien arises either from a written contract, which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity, out of general considerations of right and justice, as applied to the relations of the parties and the circumstances of their dealings."

In 17 R. C. L., pp. 604 and 605, it is said: "A party may, by manifest intent and agreement, create a security, charge or claim in the nature of a lien on real as well as on personal property whereof he is the owner or in possession, which a court of equity will enforce against him, and volunteers or claimants under him with notice of the agreement. To dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien. Thus, an agreement by which the maker incurs an obligation, and pledges the produce of certain land, or the land itself, or places a charge on land as security for the performance creates an equitable lien. * * * In fact if a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a lien. * * * Likewise, according to some decisions, a lien upon land is acquired by one who lends money for its purchase, under a promise that he is to receive a mortgage, and in the meantime is given the undelivered deed to hold as security for the performance of that agreement." And see *Walker v. Brown,* 165 U. S. 654, 17 Sup. Ct. 453, and *Jackman v. Newbold,* 28 Fed. (2d) 107.

We need not consider the effect of the statute of frauds, for that statute is not pleaded.

4. The equitable lien acquired by the plaintiff was good as against Sam and is good as against his heirs and personal representatives. It also would be good as against all persons who acquired an interest with knowledge or notice of the plaintiff's lien, but it would not be good as against one who acquired an interest without such knowledge or notice. 17 R. C. L. p. 604. When J. B. exchanged his Morton county land for the Baca county land on April 1, 1929, he had no knowledge or notice that the plaintiff had or claimed any lien upon the land. He first became aware of the transaction between Sam and the plaintiff in the winter of 1930-31. At the time of the exchange he did not take a reconveyance, deeming that unnecessary in the circumstances, but he acquired an equitable right, which he could enforce by a suit for specific performance. As he acquired his equitable interest for a valuable consideration without knowledge or notice of the plaintiff's equitable interest, he took his interest free of the claims of the plaintiff. The plaintiff cannot enforce his equitable lien as against J. B.

5. Against his codefendants J. B. had a right to compel a conveyance of the Baca county land. His codefendants recognize his right and join in demanding that title be quieted in him. The plaintiff is in no position to complain of the decree quieting the title in J. B., or to question the regularity of the procedure.

Other points are raised by the plaintiff, but they are so wholly without merit as to require no discussion in this opinion.

The judgment is affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD concur.