Dawn M. LEYDEN, f/k/a Dawn M. Howe, Petitioner,

v.

CITICORP INDUSTRIAL BANK, a Colorado corporation, Pamela Sue Evans, and Debra Lynn Evans, Respondents.

No. 88SC243.

Supreme Court of Colorado, En Banc.

Oct. 23, 1989.

Constantine Anderson & Tobey, P.C., Kevin J. O'Brien, Englewood, for petitioner.

Loser, Davies, Magoon & Fitzgerald, P.C., Edward B. Towey and John J. Coates, Denver, for respondents.

Justice ERICKSON delivered the Opinion of the Court.

Petitioner Dawn Leyden filed an action seeking a declaratory judgment in the District Court of Arapahoe County (district court) to impose an equitable lien on property which was the subject of a property settlement hearing in a divorce case. By summary judgment, the district court held that an equitable lien existed on the property by virtue of a decree of dissolution previously entered by the District Court for the City and County of Denver (dissolution court), and ordered a foreclosure sale. Respondents Citicorp Industrial Bank (Citicorp), Pamela Sue Evans, and Debra Lynn Evans (the Evanses) appealed. The court of appeals reversed, finding that the dissolution decree did not impose an equitable lien on the property. *Leyden v. Citicorp Indus. Bank,* 762 P.2d 689 (Colo.App.1988). We granted certiorari, and now reverse the judgment of the court of appeals and remand with directions.

I.

The facts are not in dispute. In 1980, petitioner and Tommy Howe were divorced. The decree of dissolution was entered on August 20, 1980, in the dissolution court. In a contested property settlement hearing, the dissolution court found that the marital residence, located at 41 South Eagle Circle, Aurora, Arapahoe County (the property), was held in joint tenancy by petitioner, Tommy Howe, and Tommy Howe's mother, Lois Howe. The relevant portions of the dissolution decree are set out in footnote 1.[1] The dissolution court further found

---

1. The decree of dissolution provided, in pertinent part:

> 5. The Court finds that the parties have the following marital property subject to division by the Court:
>
> a. The family home located at 41 South Eagle Circle, Aurora, Colorado, which property is held in joint tenancy of the parties and with the husband's mother, Lois L. Howe, legally described as follows:
>
> Lot 24 Block 1, Sunridge subdivision, Filing No. 2, According to the recorded plat thereof, County of Arapahoe, State of Colorado.
>
> The Court finds that the husband's mother, Lois L. Howe, made a down payment of $24,000.00 on the foregoing property, that it has a present fair market value of $89,000.00, and that their [sic] presently exists approximately $30,000.00 in equity in said property. The Court further finds that the $24,000.00 down payment by the husband's mother was a contribution freely made by her, and that the placing of the property in joint tenancy in the names of all three parties at the time of purchase constituted a gift of an undivided two-thirds interest in said property to the husband and wife.
>
> ....
>
> CONCLUSIONS OF LAW
>
> ....

2. In accordance with established case law, the court concludes that the mother-in-law's contribution to the acquisition of the family home constituted a gift to the parties, *and therefore the wife is the fee simple owner of an undivided one-third (⅓) interest in the family home as set forth above.*

Based upon the above findings of fact and conclusions of law, it is therefore ordered, adjudged and decreed as follows:

ORDER

1. The wife shall execute a quit claim deed *to the husband and to the husband's mother,* Lois L. Howe, divesting herself of all right, title and interest in the family home. *Contemporaneously therewith, the husband shall execute a promissory note in favor of the wife in the principal amount of $10,000.00* with interest at the prime rate prevailing at the United Bank of Denver as of August 20, 1980 (subsequently determined to be 11% per annum) which promissory note shall be payable in full upon the first happening of any of the following events:

a. The death of Lois L. Howe or Tommy I. Howe.

b. *When Tommy I. Howe and Lois Howe cease to occupy the home as their residence.*

c. *The sale of the property.*

d. On or before August 20, 1990.

that petitioner was the fee simple owner of an undivided one-third interest in the property, which had an equity value of $30,000.

The dissolution court did not order a sale of the property however. To protect the interest of Lois Howe, the court ordered petitioner to quitclaim her one-third undivided interest in the property to Tommy Howe and his mother. Tommy Howe was ordered to contemporaneously execute a promissory note in the principal value of $10,000, with interest as provided in the order, and that was to become due upon the terms set forth in the decree.

The petitioner quitclaimed her one-third interest in the property to Tommy and Lois Howe, and Tommy Howe duly executed the promissory note. On November 18, 1980, the petitioner filed the dissolution decree (but apparently not the promissory note), in the records of Arapahoe County, where the property was located.

Subsequently, Citicorp extended a loan to Tommy Howe, his new wife Blanche, and Lois Howe (the Howes). In exchange, the Howes executed a promissory note in the principal amount of $19,600.77 to Citicorp, secured by a deed of trust on the property. The deed of trust was recorded on September 20, 1982.

Some time after the deed of trust was recorded, the Howes filed for bankruptcy, and the debt evidenced by the promissory note to petitioner was discharged.[2] The Howes disclaimed any interest they had in the property, and Citicorp, after obtaining relief from the automatic stay in the bankruptcy court, foreclosed on the property and obtained a public trustee's deed.

After the discharge in bankruptcy, the petitioner filed a complaint in the district court on February 7, 1984, asking for a declaratory judgment[3] that the recorded dissolution decree created either a judicial or equitable lien on the property, praying for foreclosure of the lien, and requesting attorney fees as provided in the promissory note.[4] On the same day, petitioner filed a lis pendens on the property in Arapahoe County. While the declaratory action was pending, Citicorp transferred the property by deed to the Evanses on March 28, 1985.

Both petitioner and respondents moved for summary judgment, claiming that there was no dispute as to any material fact, and that the district court was presented with a pure question of law. On April 13, 1986, the district court granted the petitioner's motion for summary judgment, holding that the petitioner had an equitable lien on the property. In addition, the district court concluded that Citicorp and the Evanses were on notice that the petitioner was claiming a lien on the property when they obtained their interest in the property, so the respondents took the property subject to the lien. The district court also ordered a foreclosure sale of the property within thirty days, with the proceeds going to the petitioner, and any excess to the Evanses. The subsequent decree of foreclosure provided that Tommy Howe was in default under the terms of the promissory note in

*In re Marriage of Howe*, No. 80 DR 0363 (Dist.Ct. Aug. 20, 1980) (emphasis added).

2. It appears that under federal bankruptcy law, an unsecured debt arising from division of property upon divorce is dischargeable, but an equitable lien created by a dissolution decree is not, although liens are under some circumstances "avoidable." *See In re Donahue*, 862 F.2d 259 (10th Cir.1988). A valid equitable lien on property of a bankrupt that existed prior to the adjudication of bankruptcy may be enforced notwithstanding a discharge of the debtor. *Williams v. Stockman Nat'l Life Ins. Co.*, 32 Colo.App. 227, 229, 509 P.2d 1276, 1277 (1973).

3. C.R.C.P. 57(a) provides, in part:
   District and superior courts within their respective jurisdictions shall have power to de-

clare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceedings shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

4. The defendants joined in the original complaint were the Howes, Citicorp, Fidelity Financial Services, Inc., and the Public Trustee of Arapahoe County. An amended complaint, filed on September 13, 1985, added the Evanses as defendants. Only Citicorp and the Evanses appealed the judgment of the district court, and they are the only respondents in this proceeding.

the amount of $24,084.51.[5] This amount constituted the extent of the petitioner's lien on the property, and was superior to the interests of all named defendants in the property. The foreclosure sale was stayed by the district court, however, in order that an appeal might be prosecuted.

Only Citicorp and the Evanses appealed. The court of appeals reversed the judgment of the district court, holding:

> [T]he [dissolution] court did not impose any duty on husband to make payment from the proceeds of such sale, nor did the court expressly order that husband execute a deed of trust, or other security instrument, to secure payment of the note. *In the absence of the imposition of either of these duties, or any other indication to the contrary, we conclude that the dissolution court did not intend to create any security interest in favor of wife.* Consequently, under the circumstances here, the imposition of an equitable lien was error.

*Leyden v. Citicorp Indus. Bank,* 762 P.2d at 690. Under the facts of this case, we believe that the court of appeals construed petitioner's right to an equitable lien too narrowly.

## II.

The two questions that must be answered are, first, whether an equitable lien arose under the circumstances of this case and, second, if it did, whether the petitioner may enforce the lien against Citicorp and the Evanses.

■ In Colorado, an equitable lien may be created either by a written contract showing an intention to charge property with a debt or obligation, or " 'by a court of equity, out of general considerations of right and justice, as applied to the relations of the parties and the circumstances of their dealings.' " *Valley State Bank v. Dean,* 97 Colo. 151, 156, 47 P.2d 924, 927 (1935) (quoting from 1 Jones, *Liens,* section 27).

■ It has not been argued in this court that an equitable lien arose here because of a written contract. If a lien exists, therefore, it must be of the second type, that is, it must arise by virtue of the relations of the parties and the circumstances of this case. *Id.* The discretion of a court of equity in declaring that an equitable lien exists is not unbounded, however, since the purpose of the lien is to prevent unjust enrichment. *See Caldwell v. Armstrong,* 342 F.2d 485, 490 (10th Cir. 1965); *see also* Restatement of Restitution § 161 (1937).[6] As the court in *Caldwell* stated:

> An equitable lien is a creature of equity, is based on the equitable doctrine of unjust enrichment, and is the right to have a fund or specific property applied to the payment of a particular debt. Such a lien may be declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties.

*Caldwell,* 342 F.2d at 490 (footnotes omitted). The law has long recognized that, under some circumstances, legal remedies are inadequate to protect the interests of the parties. *See Page v. Clark,* 197 Colo. 306, 315, 592 P.2d 792, 797–98 (1979); 4 S. Symons, *Pomeroy's Equity Jurisprudence*

---

5. The district court arrived at the figure in the decree of foreclosure by the following analysis:

| | |
|---|---|
| Unpaid principal | $10,000.00 |
| Interest at 11% per annum from August 20, 1980 to February 22, 1984 (Public Trustee Sale date) | 3,852.80 |
| Interest at 18% per annum from February 22, 1984 to May 1, 1986 | 3,929.21 |
| Attorney Fees | 5,948.00 |
| Filing Fee | 76.00 |
| Recording Lis Pendens | 6.00 |
| Service of Process | $ 137.50 |
| Foreclosure Certificate | 135.00 |
| TOTAL | $24,084.51 |

The decree provided that "[t]he attorney fees are reasonable and are allowed as a cost of foreclosure."

6. Section 161 of the Restatement of Restitution provides, in part:

> Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises.

§ 1234 (5th ed. 1941).[7] An equitable lien that is imposed by a court of equity to prevent unjust enrichment is a special form of constructive trust.[8]

▮ The court of appeals apparently believed that the sole factor to consider in a case where an equitable lien is alleged to arise out of a judicial decree is whether the judge issuing the judgment or decree consciously intended that a lien be created. *See Leyden v. Citicorp Indus. Bank,* 762 P.2d at 690. Although the intention of the dissolution court is relevant,[9] it is not the only consideration.

▮ If an equitable lien were not imposed here, Tommy Howe would be unjustly enriched. He would have obtained the petitioner's one-third share in the marital home (valued at $10,000 in 1980 by the dissolution court) without any cost to him. After the divorce, Tommy received the benefits of a loan secured by encumbering the property, but he has paid the petitioner nothing, and has secured a discharge in bankruptcy of the debt evidenced by the promissory note to petitioner. In addition, the promissory note executed by Tommy Howe obviously dealt with or was related to specific real property, 4 S. Symons, *Pomeroy's Equity Jurisprudence, supra,* § 1234 at 695. The execution of the promissory note was tied to the petitioner's relinquishment of her interest in the property, and repayment of the note was conditioned in part on events involving disposition of the property. Under these circumstances, the district court did not err in concluding that an equitable lien should be

7. This authority states:

   The doctrine of "equitable liens" supplies this necessary element; and it was introduced for the sole purpose of furnishing a ground for the specific remedies which equity confers, operating upon particular identified property, instead of the general pecuniary recoveries granted by courts of law. It follows, therefore, that in a large class of executory contracts, express and implied, which the law regards as creating no property right, nor interest analogous to property, but only a mere personal right and obligation, equity recognizes, *in addition to the personal obligation,* a peculiar right over the thing concerning which the contract deals, which it calls a "lien," and which, though not property, is analogous to property, and by means of which the plaintiff is enabled to follow the identical thing, and to enforce the defendant's obligation by a remedy which operates directly upon that thing. *The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with or in some manner relate to specific property, such as a tract of land, particular chattels or securities, a certain fund, and the like.*
   4 S. Symons, *Pomeroy's Equity Jurisprudence* § 1234 at 695 (5th ed. 1941) (some emphasis added).

8. The relationship between an equitable lien and a constructive trust has been discussed as follows:

   The equitable lien when imposed, not as a matter of contract, but to prevent unjust enrichment, is essentially a special, and limited, form of the constructive trust. It is given for reasons that, in principle, are the same as those that warrant the constructive trust, and it works in substantially the same way. The difference is that where the constructive trust gives a complete title to the plaintiff, the equitable lien only gives him a security interest in the property, which he can then use to satisfy a money claim. Thus an equitable lien may be "foreclosed," by selling the property that has been subjected to the lien and by applying the proceeds to payment of the plaintiff's claim. This results in only a money payment to the plaintiff and obviously does not carry with it the advantages of recovering specific property. On the other hand, it operates like the constructive trust in affording a preference over other creditors and in utilizing the rules for following property into its product.
   D. Dobbs, *Remedies* § 4.3, at 249 (1973) (footnotes omitted).

9. The district court found that the order of the dissolution court made the note due and payable on the happening of any one of four events, two of which were directly related to the property. On the basis of the four triggering events, the district court concluded that "it was the intention of [the dissolution court] to charge the subject property with the debt." The district court also found that "[u]nder such circumstances, this court is required to impose an equitable lien against the subject property to secure the repayment of the promissory note." The court of appeals held that there was no such intent to create a lien. *Leyden v. Citicorp Indus. Bank,* 762 P.2d at 690.

   In the order awarding summary judgment, after the parties conceded that there was no issue of fact, the district court found that the facts and circumstances of this case, and the dissolution court's order, warranted the imposition of an equitable lien.

imposed on the property.[10] Our conclusion is consistent with that reached by other courts in similar circumstances.

In *Hart v. Hart (In re Hart)*, 50 B.R. 956 (Bankr.D.Nev.1985), a divorce decree ordered the wife to pay her former husband $15,000 upon remarriage, or upon sale of the marital home, which was retained by the wife. The wife remarried, but that marriage was annulled, and the former husband demanded the $15,000. The state court ordered the wife to pay the $15,000 within sixty days, and the judgment was recorded. The wife filed for bankruptcy, and her former husband commenced adversary proceedings in the bankruptcy court seeking a declaration, *inter alia*, that the debt owed by the wife was secured by a non-avoidable lien. The bankruptcy court agreed, and relying on *Caldwell v. Armstrong*, held that the divorce decree created an equitable lien on the marital property:

> In the present case, the divorce decree ordered the defendant to pay the plaintiff $15,000 within sixty days after the defendant remarried or upon the sale of the home. The intent of the parties was to attach some definite obligation to the family home, or in other words, to secure the plaintiff's claim to his share of the equity in the former family home. This Court, acting as a court of equity, concludes that the plaintiff has an equitable lien securing his equity in the defendant's property, and against any proceeds that might come from the sale of that property.

*Id.* at 960. Similarly, in *Bailey v. Bailey (In re Bailey)*, 20 B.R. 906 (Bankr.W.D. Wis.1982), a state divorce judgment provided that the marital property be divided equally. The former husband was awarded one of the houses owned by the parties, and the wife got the other. The divorce judgment also ordered the husband to pay the wife $23,100, while she was to quitclaim her interest in the house awarded the husband. The husband filed for bankruptcy, and sought to discharge the $23,100 debt. The wife objected on the grounds that the debt was non-dischargeable. The bankruptcy court initially concluded that the debt was in the nature of a property division, and did not constitute alimony, support, or maintenance. It was thus dischargeable if unsecured.

The bankruptcy court concluded, however, that an equitable lien was created by the divorce decree. Citing *Caldwell v. Armstrong*, the court recognized that the primary purpose for the imposition of an equitable lien was to prevent unjust enrichment. In addition, the two requirements for an equitable lien—a debt, duty, or obligation owing from one person to another, and a res to which the obligation could be fastened—were present. Thus, even though the divorce judgment did not tie the payment of the debt to the property, the bankruptcy court, sitting as a court of equity, could utilize an equitable lien in structuring an appropriate remedy. 20 B.R. at 911. *See also In re Webb*, 160 F.Supp. 544, 547–49 (S.D.Ind.1958) (discussing creation of equitable lien pursuant to property settlement agreement).

■ We believe that the present circumstances are at least as compelling as in *Hart* or *Bailey*, and thus the district court

---

**10.** In this court, the respondents make much of the point that the district court's order itself created the equitable lien, and that, therefore, no lien existed prior to the date of the district court's order. The district court's order was, of course, subsequent to the transfer of the property to the Evanses. Whether the district court's order itself "created" the equitable lien on the property, or whether it merely "declared" the existence of a lien which was created by the decree of dissolution is, in our opinion, more a matter of semantics than anything else.

An equitable lien is created, if it is at all, because of the facts and circumstances giving rise to the lien. The circumstances giving rise to the equitable lien in this case occurred at the time of the entry of the dissolution decree in 1980. Thus, even if it is correct to speak of the equitable lien as being created by the district court, the date that the lien attached to the property related back to the time of the dissolution decree. *See Williams v. Stockman Nat'l Life Ins. Co.*, 32 Colo.App. 227, 229, 509 P.2d 1276, 1277 (1973). The proper inquiry is whether the respondents were on notice, when they acquired the property, of the facts and circumstances giving rise to the lien. This is discussed below.

did not err in declaring an equitable lien.[11]

### III.

Even though we decide that the petitioner is entitled to an equitable lien on the property in order to prevent unjust enrichment, the issue remains whether the lien may be enforced against Citicorp and the Evanses, since there was no evidence that *they* would be unjustly enriched. An equitable lien is "good as against all persons who acquired an interest with knowledge or notice of plaintiff's [equitable] lien, but it would not be good as against one who acquired an interest without such knowledge or notice." *Valley State Bank v. Dean*, 97 Colo. at 157, 47 P.2d at 927. This view accords with that of the Restatement of Restitution:

d. *Enforcement against transferee.* If property which is subject to an equitable lien is transferred to a third person who has notice of the equitable lien or who does not give value, the equitable lien can be enforced against the property in the hands of the third person (see § 168). On the other hand, an equitable lien, like other equitable interests, is cut off if the property is transferred to a bona fide purchaser (see § 172).

Restatement of Restitution § 161 comment d (1937).[12] Thus, if a transferee who pays value for the property is on notice of the equitable lien, the transferee takes the property subject to the lien. "Notice," in the context of an equitable lien or constructive trust, is notice of the facts giving rise to the lien or constructive trust, and "a person has notice of facts giving rise to a constructive trust if he knows the facts *or should know them.*" *Id.* at § 174 (emphasis added). In particular,

[a] person has notice of facts giving rise to a constructive trust [or equitable lien] not only when he knows them, but also when he should know them; that is *when he knows facts which would lead a reasonably intelligent and diligent person to inquire whether there are circumstances which would give rise to a constructive trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know of such circumstances.*

is required before an equitable lien may be created. We do not believe that such a requirement is necessary to advance the interests equitable liens serve, and we decline to adopt a per se rule that would so condition the granting of an equitable lien.

---

11. The respondents contend that the petitioner is barred from establishing an equitable lien on the property by the doctrines of res judicata (claim preclusion) or collateral estoppel (issue preclusion). These defenses, however, were not raised by the respondents in the district court by way of answer, motion for summary judgment, or in response to the petitioner's motions for summary judgment. Res judicata and collateral estoppel are affirmative defenses that must be raised, or they are waived. C.R.C.P. 8(c); *Bakery & Confectionery Workers' Int'l Union Local 240 v. American Bakery & Confectionery Workers' Int'l Union Local 240*, 165 Colo. 210, 215–16, 437 P.2d 783, 785 (1968) (res judicata is an affirmative defense, and defendant will not be heard to complain that trial court did not consider it when it was not pleaded). This is not a situation where the parties tried the issue by express or implied consent, C.R.C.P. 15(b). *Cf. Great American Ins. Co. v. Ferndale Dev. Co.*, 185 Colo. 252, 254, 523 P.2d 979, 980 (1974). Nor were the issues raised in the court of appeals. Under these circumstances, we decline to reach these issues.

The respondents also claim that the petitioner is not entitled to equitable relief because she failed to have the dissolution court require security for the promissory note, as it could pursuant to section 14–10–118(2), 6B C.R.S. (1987). They cite no authority that such an undertaking

12. Under the Restatement, a purchaser at an execution or judicial sale is treated the same as any other transferee:

If property is held by a person subject to a constructive trust, and is sold on execution upon a judgment against him or at a judicial sale and the purchaser pays the purchase price *without notice* of the constructive trust, he is a bona fide purchaser (see Restatement of Trusts, § 309). This is true whether the property is purchased by a third person or by the judgment creditor himself. It is true not only in the case of sales on the execution of a judgment but also in the case of sales by a trustee in bankruptcy,.... In all these cases the purchaser is protected, although the sale was not voluntarily made by the transferor. Restatement of Restitution § 173 comment k (1937). This comment speaks of a "constructive trust," but section 172 of the Restatement, dealing in general with the defense of a bona fide purchaser, makes it clear that the principle is the same for equitable liens as well.

*Id.* at § 174 comment a (emphasis added). We agree with the district court that both Citicorp and the Evanses were on at least constructive notice of the facts and circumstances giving rise to the equitable lien when they obtained their interest in the property. When Citicorp extended the loan to the Howes, the decree of dissolution was recorded and in the chain of title of the property. Citicorp has not argued that it lacked actual knowledge of the contents of the decree.

Similarly, when the property was transferred to the Evanses, the decree was in the chain of title. In addition, when the Evanses took the property, there was a lis pendens on file that would lead a reasonable person to inquire regarding its source. The reason for the filing of the lis pendens was this very lawsuit, in which the petitioner was claiming an equitable lien.

Contrary to the contention of the respondents, recognition of an equitable lien under these circumstances would not defeat the purposes of the recording acts. The concept of constructive notice is explicitly recognized in section 38–35–109(1); 16A C.R.S. (1982 & 1988 Supp.). *See also Page v. Fees–Krey, Inc.,* 617 P.2d 1188, 1193–94 (Colo.1980). Accordingly, we conclude that the district court properly held that the petitioner's equitable lien was enforceable against both Citicorp and the Evanses.

Finally, the district court did not err in ordering a foreclosure sale. Although that issue was not specifically addressed in this court, our examination of the record reveals that the only argument advanced by the respondents in the court of appeals that the foreclosure sale was improper hinged entirely on the existence of the equitable lien itself. Since we conclude that imposing an equitable lien was not error, the order of foreclosure was not error. The same reasoning, however, does not apply to the issue of attorney fees, which was neither briefed nor argued in this court. The court of appeals did not reach the issue because it found that there was no equitable lien on the property, and the state of the record does not allow us to fairly resolve that issue.

IV.

Therefore, we reverse the court of appeals insofar as it held that the district court erred in declaring an equitable lien on the property. We return this case to the court of appeals with instructions to affirm the district court's order imposing an equitable lien and a foreclosure sale, and to consider the issue of attorney fees. Once the attorney fee issue is resolved, the court of appeals is directed to remand the case to the district court for further proceedings consistent with this opinion.