**IN RE: Christopher George KIRST, SSN: xxx-xx-xxxx Debtor.**

**Simon E. Rodriguez, Chapter 7 Trustee Plaintiff,**

**v.**

**Margaret Nelabovige, Defendant.**

**Bankruptcy Case No. 14-23835-JGR Adv. Proc. No. 15-01281-JGR**

United States Bankruptcy Court, D. Colorado.

Signed October 26, 2016

758

Lars Johnson, Eagle, CO, for Plaintiff.

W. Robert Montgomery, Lakewood, CO, for Defendant.

## OPINION

Joseph G. Rosania, Jr., United States Bankruptcy Judge

### I. INTRODUCTION

Fraudulent transfer law began as criminal and therefore intentional fraud law.[1] However, since courts struggled reaching conclusions of the subjective intent of the transferor, the fraudulent transfer law was objectified. The courts began using badges of fraud beginning with Twyne's case[2] in order to determine subjective fraudulent intent by reference to objective facts, and the law of fraudulent dispositions was extended to constructively fraudulent transfers.

The Bankruptcy Code codifies the law of subjective and objective fraudulent transfers in 11 U.S.C. §§ 548 (a)(1)(A) and (a)(1)(B). The subjective standard is whether there was actual intent to hinder, delay or defraud a creditor and the objective standard is whether the debtor-transferor received a reasonably equivalent value in exchange for such transfer and whether the debtor-transferor was insolvent or rendered insolvent by the transfer.

The question here is whether an innocent mistake by a grandmother in titling property in her name and the names of her daughter and son-in-law is reached by the law of constructively fraudulent transfers when the son-in-law transferred his interest in the property back to the grandmother immediately upon her request almost two years before the son-in-law filed bankruptcy.

### II. FACTUAL BACKGROUND

Debtor, Christopher G. Kirst ("Mr. Kirst"), filed a voluntary Chapter 7 case on October 10, 2014 (the "Petition Date") and Simon E. Rodriguez was appointed Chapter 7 trustee of his bankruptcy estate ("Trustee"). The Trustee filed a complaint against Mr. Kirst's mother in law, Margaret Nelabovige ("Mrs. Nelabovige"), for recovery of a constructive fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1).

The court heard four witnesses: Mrs. Nelabovige, Mr. Kirst, Nicole Kirst (the

---

1. The Law of Fraudulent Transactions, Peter Alces, ¶ 5.02 (1989).

2. 3 Coke Rep. 80(b), 76 Eng. Rep. 809, (Star Chamber 1601).

wife of Mr. Kirst) ("Mrs. Kirst"), and David B. Kullman ("Mr. Kullman"), and admitted exhibits, at trial. The court found their testimony credible and consistent.

Mrs. Nelabovige is Colorado native who lived in Pennsylvania forty-five years while she was married to Joseph Nelabovige ("Mr. Nelabovige."). She is 75. They had two daughters, one of whom is Mrs. Kirst.

Mr. Nelabovige and Mr. Kirst acquired a commercial fire sprinkler business in Pennsylvania as business partners in 2002 or 2003, known as A&B Fire Protection, Inc. ("A&B"). They operated the business together with a few other employees until Mr. Nelabovige passed away in March 2012. Mr. Nelabovige handled the office or business side of the business and Mr. Kirst was a mechanic and dealt with clients in the field.

Mrs. Nelabovige testified she was a caretaker for her two daughters during her marriage, not sophisticated financially and not involved in the financial affairs of her family. Mr. Nelabovige would give her cash to pay the household bills each week. She rarely used the family's joint checking account and had her own small Christmas savings account. She stated she had nothing to do with and did not know anything about A&B's business.

After Mr. Nelabovige passed away, Mrs. Nelabovige considered returning to Colorado to be with her brother and sister, who live in Colorado. She said she had no family in Pennsylvania (her other daughter had moved to Maryland), and was motivated by the willingness of Mr. and Mrs. Kirst to move to Colorado with her. So, in the summer of 2012, Mrs. Nelabovige, Mr. and Mrs. Kirst, three children of Mr. and Mrs. Kirst, and three dogs traveled to Colorado for a family visit. Mrs. Nelabovige had not yet made the decision to move to Colorado when they made the trip.

While they were on the trip, someone in the family "stumbled upon" a house on 1101 Antero Drive, Fairplay, Colorado 80440, for sale online (the "Fairplay House"). Mrs. Nelabovige was attracted to the Fairplay House because it was on 90 acres on the top of a mountain with 360 degree views, the price was "good" and she "fell in love with it."

Thus, Mrs. Nelabovige purchased the Fairplay House on September 28, 2012. The closing was personally attended by Mrs. Nelabovige and Mr. Kirst. Mrs. Nelabovige moved into the Fairplay House and intended to occupy it as her residence with the Kirst family. The Kirst family moved into the Fairplay House in October 2012 and Mrs. Nelabovige shortly thereafter. Mrs. Nelabovige only lived there for a short time because it was too small and had extremely dangerous steps upon which she fell and broke her ribs. Mrs. Nelabovige obtained an estimate to remodel but determined it was too expensive.

When Mrs. Nelabovige went to the closing of the Fairplay House, someone at the title company asked her how she wanted the deed prepared. Mrs. Nelabovige paid the purchase price of $396,000 from her own funds. Mrs. Nelabovige testified she did not have a lawyer with her at the closing and it was not her intent prior to the closing to put the title into anybody else's name. She said she assumed her name alone would be on the deed since she alone was paying for the Fairplay House.

However, Mrs. Nelabovige said that since she was old and Mrs. Kirst had been very sick the past three years, she was concerned about who would take care of her three grandchildren and where they would live if anything happened to her and Mrs. Kirst. Thus, without the benefit of professional advice, she had the title put in three names in joint tenancy at the closing: her name and the names of Mr. Kirst and

Mrs. Kirst. Defendant's Exhibit A. She said it was estate planning to protect her grandchildren. When asked if she intended to make a gift to Mr. and Mrs. Kirst she responded, "Not really." Mr. Kirst and Mrs. Kirst stated they did not discuss Mrs. Nelabovige's intent in putting their names on the deed prior to, at, or after the closing.

Mr. and Mrs. Kirst never paid monetary rent for the Fairplay House when they lived there. After they moved into the house, they paid for trash removal, propane, property insurance[3] and performed routine maintenance and snow removal. Mrs. Nelabovige paid for new plumbing, new wiring, new appliances and the real property taxes for the Fairplay House.

Mrs. Nelabovige was a "mother in law" who was not aware of and "did not get into" the financial affairs of Mr. and Mrs. Kirst. She "did not ask questions about money." However, she bought and paid for the Fairplay House because she did know Mr. and Mrs. Kirst did not have money to buy a house.

In early 2013, Mrs. Nelabovige's brother referred her to an estate planner, Mr. Kullman. Mr. Kullman has been an estate planner in Colorado for over thirty years. Her brother told him his sister recently moved to Colorado and needed help because her husband passed away and she never handled money. Mr. Kullman testified concerning several meetings in Mr. Kullmans's office in early 2013.

Mrs. Nelabovige told him the title to the Fairplay House was in her and Mr. and Mrs. Kirst's names. Mr. Kullman testified it was her intent for her grandchildren to receive her property, but not while she was alive. Mr. Kullman said Mrs. Nelabovige was not aware of and did not understand the legal, tax or financial issues regarding the method of the titling of the Fairplay House. Mr. Kullman said this state of the title was not unusual in his experience as an estate planner and he sees this situation a half dozen times per year in his dealings with elderly clients due to their efforts in "medicaid planning." He also said in these instances there is no intent to give any assets away; rather, it is estate planning to make sure the family of the elderly person is protected upon their death and avoid the probate process. Mrs. Nelabovige told Mr. Kullman she never intended to gift the Fairplay House to Mr. and Mrs. Kirst but intended estate planning to protect her grandchildren and avoid probate. Mrs. Nelabovige did not file a federal gift tax return for 2012.

Mr. Kullman advised Mrs. Nelabovige to get the title of the Fairplay House out of the names of Mr. and Mrs. Kirst as soon as possible, establish a living trust and transfer title of the Fairplay House to her newly created living trust. Thus, following Mr. Kullman's advice, Mr. and Mrs. Kirst transferred their interests in the Fairplay House to Mrs. Nelabovige via a Quit Claim deed for consideration of $10 on February 27, 2013. Defendant's Exhibit B. Mr. and Mrs. Kirst testified they immediately executed the Quit Claim deed to Mrs. Nelabovige at her request for no consideration without hesitation because, "it was not their property."

Mr. Kullman set up a living trust for Mrs. Nelabovige titled, "The Margaret Nelabovige Living Trust" (the "Trust") in May, 2013. Mrs. Nelabovige was the Trus-

---

**3.** Trustee's Exhibit 5 was a copy of the property insurance for the Fairplay house as of September 2014. It shows the named insureds as Mr. and Mrs. Kirst. Mr. Kirst stated he called the insurance company and was not asked who owned the property. Mrs. Nelabovige said she requested they obtain property insurance, especially for a property in the mountains.

tor of the Trust. Defendant's Exhibits C and D. Then, Mrs. Nelabovige transferred title of the Fairplay house to the Trust. Defendant's Exhibit E.

As a result of the Trust, Mr. Kullman explained that no gift tax is incurred, the beneficiaries get a stepped up tax basis in whatever real estate is owned by the Trust at the time of Mrs. Nelabovige's death, and the Trust distributes the proceeds to the beneficiaries in the manner set forth therein upon her death, avoiding the time and cost of a formal probate proceeding.

The Trust sold the Fairplay House in December, 2014 for $395,000. Defendant's Exhibit F. Using the money the Trust received from the sale, the Trust purchased 877 Windmill Drive, Hartsel, Colorado 80449 (the "Hartsel House"), on approximately the same date. Defendant's Exhibit G. Mrs. Nelabovige testified the Hartsel House was much bigger than the Fairplay House and had a huge garage that she turned into a "granny suite." Mr. and Mrs. Kirst and their family moved from the Fairplay House into the Harstel House thereafter. Mrs. Nelabovige has not yet moved into the Hartsel House due to the time it took to remodel the "granny suite."

Mr. Kirst testified on the issue of whether he was insolvent on the date of the challenged transfer, February 27, 2013, or rendered insolvent by the transfer. The transfer occurred approximately twenty months before he filed his bankruptcy case. By February 27, 2013, Mr. Kirst owned 98% of A&B. Although he said the value of his assets and liabilities were about the same on February 27, 2013 and the Petition Date [4], he testified as owner of A&B that he could have sold A&B in the mid 2013 time frame and paid all of his

debts in full. He based that opinion on his familiarity with the business, its continuous operation for over ten years, its growing list of accounts and good location, and payment of its debts. Although he testified on cross examination that he did not appraise or market A&B's business, his testimony was unrefuted.

### III. LEGAL ANALYSIS

The court has subject matter jurisdiction over this action to recover a fraudulent transfer pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and 28 U.S.C. § 157(b)(2)(H). The Trustee's constructive fraudulent transfer claim is Mrs. Nelabovige made a gift of a one-third (1/3) interest in the Fairplay House to Mr. Kirst on September 28, 2012, when she titled the Fairplay House in her name and the names of Mr. and Mrs. Kirst as joint tenants. The Trustee further contends that when Mr. Kirst quit claimed his interest in the Fairplay House to Mrs. Nelabovige on February 27, 2013, he made a transfer of his property to her and received less than a reasonably equivalent value in exchange for the transfer and was either insolvent on the date of the transfer or rendered insolvent by the transfer. Finally, the Trustee requests a judgment against Mrs. Nelabovige under 11 U.S.C. § 550(a)(1) in the amount of $131,666, which is one-third (1/3) of the amount the Trust sold the Fairplay House for in December 2014.

The Trustee called one witness, Mr. Kirst, the examination of whom focused on insolvency. The Trustee argues he has met his burden of proof to establish a constructively fraudulent transfer by a preponderance of the evidence because he is entitled to the presumption under Colorado law

---

**4.** Mr. Kirst's bankruptcy schedules show assets of $59,766 and liabilities of $302,366 as of the Petition Date. (Plaintiff's Exhibit 1).

that Mrs. Nelabovige made a gift, and the burden of proof shifts to her to produce strong and convincing evidence that she did not intend a gift. The Trustee claimed she made the gift for asset protection.

11 U.S.C. § 548(a)(1)(B) in relevant part provides: The Trustee may avoid any transfer...of an interest of the debtor in property...that was made or incurred within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(b)(i) received less than a reasonably equivalent value in exchange for such transfer...and

(ii)(I) was insolvent on the date such transfer was made or became insolvent as a result of such transfer....

■ The Supreme Court has ruled that in order to prevail on a claim of a constructive fraudulent transfer, the plaintiff must prove four elements: (1) the debtor had an interest in the property; (2) a transfer of that interest occurred within two years of the filing of the bankruptcy petition; (3) the debtor was insolvent or was rendered insolvent as a result of the transfer; and (4) the debtor received less than a reasonably equivalent value for the transfer. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). Elements 2 and 4 are not in dispute here.

■ An interest in property consisting of bare legal title holds no tangible economic value. Thus, the transfer of bare legal title does not constitute a fraudulent transfer. *Davis v. Pham (In re Nguyen)* 783 F.3d 769, 776 (10th Cir. 2015)(Affirming Bankruptcy Court's ruling that "bare legal title is not an interest that may be avoided under 11 U.S.C. § 548(a)(1)(B)"); *Goddard v. Heldt (In re Heldt)*, 528 Fed. Appx. 779, 781 (10th Cir. 2013)(Mother's gift to daughter was an estate planning device, not a gift, so daughter held only bare legal title)(unpublished opinion)); *Geremia v. Dwyer (In re Dwyer)*, 250 B.R. 472, 474 (Bankr. D. R.I. 2000)("When a debtor holds only bare legal title, and not equitable title to property, only the legal title becomes part of the debtor's bankruptcy estate").

Hence, the question is whether under Colorado law, Mrs. Nelabovige made a gift of a one-third (1/3) interest in the Fairplay house to Mr. Kirst. If there was no gift, since she paid for the Fairplay house and did not receive any consideration from Mr. Kirst, a resulting trust arises in Mrs. Nelabovige's favor. In a resulting trust, the transfers to and from Mr. Kirst were of bare legal title only, Mrs. Nelabovige held the equitable title, and the fraudulent transfer claim fails.

■ In Colorado, the presumption of intent to gift extends to spouses, children and others when there is a natural, moral or legal obligation to provide support. *Rowe v. Johnson*, 33 Colo. 469, 472, 81 P. 268, 269 (Colo. 1905). Intent controls and the presumption of a gift can be overcome by certain, definite, reliable and convincing evidence, sufficient to leave no reasonable doubt that the intent of the parties was not in the nature of a gift. *Fister v. Fister*, 122 Colo. 432, 435, 222 P.2d 620, 622 (Colo. 1950).

■ The Colorado courts have consistently held that where a husband pays the consideration and causes the conveyance to be made to his wife, there is a presumption that he intended it as a gift or advancement; but such presumption is overcome where evidence that is strong and convincing shows a gift or advancement was not intended, in which case a resulting trust arises in favor of the husband. *Valley State Bank v. Dean*, 97 Colo. 151, 154–155, 47 P.2d 924 (Colo. 1935). In Dean, a husband

paid for certain property but placed the title thereto in his wife's name. The Court found the husband was the beneficial owner of the property and the wife's interest was limited to bare legal title. *Id.* at 155, 47 P.2d 924.

 In order to qualify as a gift, a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift and acceptance of the gift. *In re Marriage of Balanson*, 25 P.3d 28, 37 (Colo. 2001). Moreover, a gift is established when, "the donor parts with all present and future dominion over the property given." Further, "the gift must be absolute and irrevocable without reference to taking effect at some future period." *Johnson v. Hilliard*, 113 Colo. 548, 552–553, 160 P.2d 386, 388 (Colo. 1945).

 Ultimately, it is the intent of the transferor that is determinative, and to prove that a gift was not intended, Mrs. Nelabovige may rely upon "all the attendant facts and circumstances including statements made by the parties contemporaneously with the transaction" .... and "evidence of the transferor's acts and conduct, which occur subsequent to the transfer of title, is admissible to prove intent at the time of the transfer." *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 740 (Colo. 1991).

 The court finds by strong and convincing evidence, from the attendant facts and circumstances and her conduct which occurred subsequent to the transfer of title, Mrs. Nelabovige did not intend to make a gift to Mr. Kirst. Thus, Mr. Kirst only had bare legal title subject to a resulting trust in favor of Mrs. Nelabovige who held equitable title.

Judge Tallman considered this issue in the case of *In re Shepard*, 05-19405 (Bankr. D. Colo. Jan. 25, 2006), in a different context. In *Shepard*, a daughter pur-chased a condo and her father co-signed the mortgages on the condo. Title was put in both names. Daughter alone lived in the condo and she paid the mortgages, taxes and insurance.

The question was whether the father was eligible to be a debtor under Chapter 13 which, in turn, required the court to determine the nature of the father's interest in the condo. Did the father have equitable title or merely bare legal title? Following *Valley State Bank v. Dean*, 47 P.2d at 924, the court concluded the father merely had bare legal title which lacked any economic value. The court stated, "The logic behind the holding in the *Dwyer* case, and those like it, is to shield property from turnover or avoidance actions by a chapter 7 trustee because the debtor does not have any interest in it". *In re Shepard*, at page 4.

A similar result is reached here. Mr. Kirst only held title to the Fairplay House for a very short period of time. The following undisputed facts support this conclusion:

- Mrs. Nelabovige paid for the Fairplay House with her own funds;
- Mrs. Nelabovige was not aware of and did not understand the legal, tax or financial issues which arose by her transfer of the title to the Fairplay House into the names of her daughter and son-in-law at the closing;
- The transfer of the Fairplay House into three names occurred twenty months before Mr. Kirst filed bankruptcy;
- Since Mrs. Nelabovige had limited legal, tax or financial knowledge, the court does not believe the placing of the title into three names could have been done for asset protection planning;

- The timing of the issue of the titling of the Fairplay House did not come up until the closing and was "sprung" upon Mrs. Nelabovige;
- Mr. Kirst and Mrs. Kirst testified there was no discussion with Mrs. Nelabovige prior to, at, or after the closing regarding her intent to make a gift by titling the Fairplay House in their names;
- Mrs. Nelabovige intended to occupy the Fairplay House as her residence at the time of the closing and moved into it;
- Mrs. Nelabovige paid for all of the significant systems repairs required in the Fairplay House such as plumbing, electrical and appliances and the real property taxes;
- Mr. and Mrs. Kirst's actions in paying rent for the Fairplay House in the form of paying for propane, utilities, trash removal, snow removal, property insurance and routine maintenance is consistent with a familial landlord-tenant relationship;
- Mrs. Nelabovige did not file a gift tax return in 2012;
- Mrs. Nelabovige told Mr. Kullman in early 2013 she did not intend to make a gift of the Fairplay House;
- Mr. and Mrs. Kirst both testified they willingly signed the quit claim deed on February 27, 2013 of their interests in the Fairplay House to Mrs. Nelabovige for no consideration at her request because it was not their property;
- Mr. Kirst's transfer was not a general transfer of all of his assets or made secretly;
- There was no evidence of any pending or anticipated legal actions against either Mrs. Nelabovige or Mr. Kirst as of the date of the transfer;

- Mrs. Nelabovige exercised dominion and control over the Fairplay House illustrated by her moving into the house, paying the real property taxes, paying for significant systems repairs, obtaining the title back from Mr. and Mrs. Kirst, transferring the Fairplay House into the Trust and directing the Trust to sell the Fairplay House and purchase the Hartsel House;
- Mr. and Mrs. Kirst transferred their interest to Mrs. Nelabovige five months after the closing and one month after Mrs. Nelabovige received professional estate planning advice;
- After the Trust sold the Fairplay House and purchased the Hartsel House, Mr. and Mrs. Kirst moved into the Hartsel House and have paid rent in the same fashion they paid rent for the Fairplay House by paying for utilities, propane, routine maintenance, snow removal and lawn care;
- Mrs. Nelabovige never told Mr. and Mrs. Kirst she was making a gift to them of interests in the Fairplay property, which in the view of this Court would be a natural act following such a significant "gift"; and
- At all times the parties acted in good faith.

For the above reasons, the court finds the September 28, 2012 transfer was conditional and for estate planning purposes.

The court does not need to decide whether Mr. Kirst was insolvent or rendered insolvent by the transfer on the Petition Date since all he transferred on February 27, 2013 was bare legal title holding no economic value.

## IV. CONCLUSION

Mr. Kirst held no economic interest in the Fairplay House. A resulting trust un-

der Colorado law arose in favor of Mrs. Nelabovige, who held equitable title. Accordingly, the re-conveyance of his bare legal title was not a fraudulent transfer. Judgment shall enter in favor of the Defendant, Margaret Nelabovige and against the Plaintiff, Simon E. Rodriguez, Chapter 7 trustee. The Complaint is dismissed, with prejudice.