In Re Philip R. **MEADOWS** and Carolyn H. Meadows, t/a Triple M Farms.

Philip R. **MEADOWS** and Carolyn H. Meadows, t/a Triple M Farms, Appellants,

v.

**FARMERS & MERCHANTS NATIONAL BANK OF STANLEY, VIRGINIA, Appellee.**

Bankruptcy No. 5–85–00096. Civ. A. No. 86–0017–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

April 29, 1987.

G. William Watkins, Allen, Dalton & Watkins, Waynesboro, Va., for appellants.

Mark N. Reed, Will, Hennessy & Reed, Luray, Va., for appellee.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case comes before the court upon an appeal from the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division. Appellants, Philip R. Meadows and Carolyn H. Meadows, seek to avoid liens held by Farmers & Merchants National Bank of Stanley, Virginia (the Bank), on certain dairy cattle and equipment which the Bank repossessed. The bankruptcy court denied the Meadows' motion to avoid the liens with respect to these items, holding that: (1) the Bank's security interest in the cattle and equipment was a possessory security interest under 11 U.S.C. § 522(f), and therefore not subject to avoidance; and (2) cows and calves do not qualify as tools of the trade under § 522(f). The bankruptcy court also held that at the time the Chapter 7 case began, the Meadows were no longer actually engaged in the business of farming and therefore could not invoke the "poor farmers" exemption under Virginia Code § 34–27. For the reasons stated below, this court will affirm the ruling of the bankruptcy court in part, reverse it in part, and

remand the case for further proceedings in the bankruptcy court.

## Summary of Facts

Philip R. Meadows and Carolyn H. Meadows were both raised as farmers in families which have been farming for generations. Until just prior to their bankruptcy, the Meadows operated a substantial dairy farm, deriving approximately 75 percent of their gross income from the farm in 1984. In addition to working on the farm, Mrs. Meadows worked during the day at Burner Well Drilling. The Meadows' two sons worked on the farm after school.

On August 4, 1981, the Meadows executed a promissory note payable to the Farmers & Merchants National Bank of Stanley in the amount of $105,000. They also executed a security agreement, granting the Bank a nonpurchase money security interest in all their machinery, equipment, furniture, and fixtures and in 99 cows and heifers. The Bank's security interest, which was perfected by the filing of the financing statement in the Rockingham County Circuit Court clerk's office, attached to all of the property at issue in this proceeding: 9 cows, 6 calves, and all of the farm equipment and machinery. Under the terms of the security agreement, the Meadows retained possession of this property, but the agreement required the Meadows to deliver the collateral to the Bank upon demand, whether or not there was a default. After the Meadows defaulted on the note, and just before they filed their Chapter 7 petition, the Bank repossessed the property in accordance with the agreement.

In January and February, 1985, the Meadows' secured creditors foreclosed on farm acreage and repossessed cattle, machinery, and equipment. Mr. Meadows then took a job in a dairy in Northern Virginia, commuting home on his days off. The Meadows continue to make hay and raise cattle, although their operation is on a much smaller scale than previously. The Meadows now own only 5 acres of land, but have indicated their intention to continue farming on adjoining acreage owned by their parents in Page County and Rockingham County.

## Questions on Appeal

The questions on appeal are as follows:

1. Is the Bank's security interest in the Meadows' exempt property a nonpossessory security interest under 11 U.S.C. § 522(f)?
2. Are the Meadows engaged in the trade of farming such that they may invoke the lien avoidance provisions of 11 U.S.C. § 522(f) and the exemptions provided by Virginia Code § 34–27?
3. Are the dairy cattle claimed as exempt by the Meadows implements or tools of their trade under 11 U.S.C. § 522(f)?

## The Nature of the Bank's Security Interest

The lien avoidance provision at issue in this case is 11 U.S.C. § 522(f), which allows debtors to avoid a judicial lien or a lien arising from "a nonpossessory, nonpurchase-money security interest" in specified property. Unfortunately, the Code does not define "nonpossessory interest."

In this case, the bankruptcy court held that the Bank's security interest in the cattle and equipment was possessory under § 522(f) because the Bank repossessed the property prior to the Meadows' filing of their Chapter 7 petition and because the repossession was in accordance with the security agreement, which provides that the Bank may take possession of the collateral at any time upon demand.

The Meadows argue that the court's analysis under § 522(f) should focus on how the secured party's lien arose. In this case, they maintain that the Bank's lien is nonpossessory because it arose not by possession, but by the terms of a written security agreement. In response, the Bank argues that under Virginia Code §§ 8.9–305 and 8.9–303(2), a nonpossessory security interest may be converted to a possessory security interest and vice versa. This argument confuses two distinct lines of analysis, however. Under the U.C.C. as adopted in Virginia, disputes between creditor and debtor are analyzed differently

from disputes between creditors. Disputes between debtor and creditor involve questions of attachment and enforceability of liens. Disputes between creditors, in contrast, raise questions of priority which are resolved under the rules governing perfection of security interests. Here, the provisions of the Virginia Code cited by the Bank are concerned solely with the perfection of security interests. Specifically, §§ 8.9–305 and 8.9–303(2) preserve the perfection of a creditor's security interest, and therefore his priority, in situations where the collateral is transferred between the debtor and the creditor. Because these sections govern rights between creditors, rather than rights between creditor and debtor, they provide no guidance in interpreting the lien avoidance provisions of 11 U.S.C. § 522(f).

The court turns therefore to the legislative history of § 522(f). The section was enacted as part of the Bankruptcy Reform Act of 1978. Pub.L. No. 95–598, 92 Stat. 2549, 2589 (1978). The House Report on the bill contains the following comments concerning § 522(f):

In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt properties such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

. . . .

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of non-purchase money security interests in household goods. Such security interests have too often been used by overreaching creditors. The bill eliminates any unfair advantage creditors have.

H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6087 (footnotes omitted).

■ This statement of congressional purpose adds weight to the Meadows' argument that the inquiry under § 522(f) should focus on how the lien initially attached and became enforceable against the debtor. If creditors could obtain a "possessory" interest under the statute simply by repossessing the collateral, they would do so as a matter of course, frustrating the purpose of the statute. In enacting § 522(f) to provide for the avoidance of liens on certain kinds of property, Congress struck a balance between the interests of the debtor and the interests of the creditors. In the court's judgment, the interpretation urged by the Bank, and accepted by the bankruptcy court, would upset this balance. The court therefore concludes that the proper analysis under § 522(f) is simply to determine how the lien initially attached and became enforceable against the debtor. The other courts which have addressed this question have reached the same conclusion. *In re Wood,* 13 B.R. 245 (Bankr.E.D.N.C., 1981); *In re McFarland,* 38 B.R. 370 (Bankr.N.D.Iowa, 1983).

■ In this case, the court finds that the security interest held by the Bank attached and became enforceable against the debtor by virtue of a security agreement signed by the parties. It was not a possessory security interest, and the subsequent repos-

session of the collateral does not alter this status for the purposes of § 522(f). The court will reverse the decision of the bankruptcy court on this question and remand the case for further proceedings consistent with this opinion.

*Whether Debtors are Engaged in Farming*

### A. 11 U.S.C. § 522(f)

■ Because the bankruptcy court found that the lien held by the Bank was possessory, it made no finding of fact concerning the Meadows' status as farmers under § 522(f). When a debtor seeks to avoid liens on implements, professional books, or tools of the trade under § 522(f)(2)(B), the court must determine whether the debtor is engaged in the trade. The Code provides little assistance for courts in making this determination.[1] In this court's judgment, the inquiry must vary somewhat depending on the trade. Certain trades, including family farming, the trade at issue in this case, are especially difficult to assess. As the Meadows point out in their brief, many family farmers must supplement their farm income with income derived from outside employment in order to maintain a reasonable standard of living. Therefore, although outside employment is a factor courts should consider under § 522(f), such employment should not be taken as conclusive evidence that the debtors are not engaged in farming. Similarly, examining the relative percentages of income derived from farming and outside employment is an unsatisfactory test. The court concludes that the proper course is to determine from all of the circumstances in a particular case whether the debtor is legitimately engaged in the trade which currently and regularly uses the specific implements or tools exempted and on which lien avoidance is sought. *In re LaFond,* 45 B.R. 195, 200 (Bankr.D.Minn.1984); *In re Yoder,* 32 B.R. 777, 781 (Bankr.W.D.Pa.1983).

In making this determination, the time period examined by the court will vary according to the circumstances of the case. As the court noted in *Flick v. Farmers Home Administration,* 47 B.R. 440, 443 (W.D.Pa.1985),

> Although as a general rule a debtor must be engaged in the relevant trade on the date of the bankruptcy petition, a temporary abatement of work in the trade may not be fatal to the claimed exemption for tools of the trade. Courts have upheld the exemption in the absence of an intentional abandonment of the trade by the debtor.

(Citations omitted.)

In the present case, the bankruptcy court made no finding of facts concerning the Meadows' status as farmers under 11 U.S.C. § 522(f). The court will therefore remand the case to the bankruptcy court for further proceedings in accordance with this opinion.

### B. *Virginia Code § 34–27*

Before debtors may avoid a lien under § 522(f), they must show that the lien impairs an exemption to which they would be entitled under § 522(b). Among the exemptions claimed in this case by the Meadows was the poor farmers exemption under Virginia Code § 34–27, which the bankruptcy court denied.

■ The proper analysis under Virginia Code § 34–27 is similar to the analysis for 11 U.S.C. § 522(f) discussed above, but the two are not identical. Like the federal statute, the Virginia statute provides no benchmark for determining whether a person is engaged in farming. A court must therefore examine the circumstances of each case, bearing in mind that Virginia Code § 34–27 is a remedial statute which should be liberally construed. The wording of Virginia Code § 34–27 is more explicit than 11 U.S.C. § 522(f), however, requiring the court to determine whether the debtor claiming the exemption is "at the time actu-

---

**1.** The court agrees with the Meadows and the holding in *In re LaFond,* 45 B.R. 195, 199 (Bankr.D.Minn.1984) that the definition of "farmer" laid out in 11 U.S.C. § 101(17) was not intended for use in proceedings under § 522(f). The definition does not appear to have figured in the bankruptcy court's ruling in this case, however.

ally engaged in the business of agriculture." In determining whether the exemption is available, therefore, the court must look to the time that the bankruptcy petition was filed. *Cf., Flick v. Farmers Home Administration, supra.*

To ensure that the bankruptcy court's findings are grounded upon the proper analysis, the court will remand the case for reconsideration of the availability of the poor farmers exemption under § 34–27.

*Cattle as Tools of the Trade*

■ The Meadows argue that dairy cattle should qualify as implements or tools of the trade under § 522(f)(2)(B). They note that a dairy cow is depreciated over its useful life, just as any other farm tool. The court in *In re Walkington*, 42 B.R. 67, 11 C.B.C.2d 276 (Bankr.W.D.Mich., 1984) accepted this argument, stating that "Congress did not place any limit on the kinds of property which may constitute a "tool" since to do so would unfairly discriminate against particular professions and undermine the fresh start policy that the Code seeks to promote." *Id.*, 42 B.R. 72, 11 C.B.C. at 281. While this logic is enticing, this court cannot ignore that the plain meaning of the words "tools or implements" does not include animals. Moreover, animals are specifically listed in the preceding section, § 522(f)(2)(A). Had Congress intended to include animals in § 522(f)(2)(B) as well, it would have done so explicitly. The court will therefore affirm the ruling of the bankruptcy court on this question.

An appropriate Order shall this day issue.

ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED AND ORDERED that:

1. This case shall be, and it hereby is, remanded to the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division, for further proceedings consistent with the Memorandum Opinion issued this day.

2. This case shall be, and it hereby is, dismissed and stricken from the docket of this court.