**VIRGINIA BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION,**
**Plaintiff–Appellee,**

v.

**Frank E. WOOD; Beverly J. Wood, doing business as Franklin Investments, Franklin Development Co., and Franklin Woodworks; Frank E. Wood; Beverly J. Wood, and the Unsecured Creditors Committee (UCC), Defendants–Appellants.**

No. 88–1308.

United States Court of Appeals, Tenth Circuit.

April 18, 1990.

James A. Hogue, Sr., Hogue and Turkel, Inc., Tulsa, Okl., for defendants-appellants.

Andrew R. Turner, Conner & Winters, Tulsa, Okl., for plaintiff-appellee.

Before TACHA, BALDOCK, and BRORBY, Circuit Judges.

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

During March of 1983, appellants Frank and Beverly Wood (hereinafter debtors)[1] executed an installment note in the principal amount of $1,500,000.00 in favor of First City Mortgage Company. This note was almost immediately assigned to appellee Virginia Beach Federal Savings and Loan Association (hereinafter VBF). The note was secured by a mortgage and security agreement as well as an assignment of interest in leases, all executed by debtors in favor of First City and then assigned to VBF.

Debtors defaulted on the note leaving an unpaid balance of approximately $1,500,-000.00 including interest. VBF commenced a foreclosure action in state court in an effort to obtain the premises that were mortgaged to secure the debt. The state court entered a journal entry of judgment in favor of VBF which included an order of foreclosure authorizing a sheriff's sale. VBF did not seek the appointment of a receiver pending the sale.

The sale was stayed by debtors' filing of a petition for relief under Chapter 11 of the Bankruptcy Code. In the bankruptcy court, VBF filed a notice of its claim under 11 U.S.C. § 546(b) to cash collateral in the form of rental income from the mortgaged property. The bankruptcy court denied VBF's claim. VBF appealed to the district court. The district court reversed and held that VBF was entitled to the rental income since the filing of the § 546(b) notice. 97 B.R. 71.

On appeal, debtors essentially make two assignments of district court error. First, debtors contend that the district court erred in its legal conclusion that VBF was

---

1. For the purposes of this opinion, we subsume within the term "debtors" appellant unsecured creditors committee—a party of like interest to the Woods.

entitled to the rental income. Second, debtors argue that the district court erred procedurally by permitting a magistrate to conduct an advisory hearing and that the bankruptcy appeal was actually decided by a magistrate and not by an Article III judge. For the reasons set forth below, we affirm.

■ In reviewing the decision of a bankruptcy court, the district court and the court of appeals apply the same standards of review—*de novo* for legal determinations and clearly erroneous for factual findings—that govern the appellate review in other cases. *See, e.g., Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543 (10th Cir.1988).

■ Initially, we determine that debtors' second appellate argument is without merit. We agree with debtors that magistrates are not permitted to enter final decisions in bankruptcy appeals. However, there is no evidence that that was done in this case. The final order which we now review was signed by the district judge.

Turning to debtors' first appellate argument, we must begin by determining whether the subject rental income can be considered cash collateral under the Bankruptcy Code. Cash collateral is defined by 11 U.S.C. § 363(a)[2]. Rental income from property subject to a security interest as provided for in 11 U.S.C. § 552(b)[3] comes within the definition of cash collateral. We look to state law to determine whether VBF had the requisite security interest in

the subject rental income. *See Butner v. United States*, 440 U.S. 48, 55–57, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979).

■ VBF does not ground its security interest on the assignment of interest in leases. It concedes that such an assignment of rental income made conditional upon the future default of the mortgagor was void and unenforceable during the time period relevant to this case.[4] *See Hart v. Bingman*, 171 Okla. 429, 43 P.2d 447, 449 (1935) (holding mortgage clauses which attempt to pledge rents to be void and unenforceable because they are contrary to public policy).

VBF's claim to the rental income stems from the existence of the mortgage itself. This court, in reliance upon the language of the state statute governing the appointment of a receiver, Okla.Stat. § 518(2) (1921) (predecessor provision to identical Okla.Stat. tit. 12, § 1551(2)(1981)) (since amended, effective Nov. 1, 1989), stated "[t]he statute recognizes the mortgage as creating an equitable lien on the rents pending foreclosure." *Little v. Keaton*, 38 F.2d 457, 461 (10th Cir.), *cert. denied*, 282 U.S. 847, 51 S.Ct. 26, 75 L.Ed. 751 (1930). This equitable lien arising from the mortgage and security agreement constitutes the security interest under § 552(b) that causes the rental income to be categorized as cash collateral under § 363(a).

Section 552(b) qualifies the continuing (postpetition) force of a prepetition security interest by noting the overarching control of other code sections, including 11 U.S.C.

---

**2.** Cash collateral is defined in 11 U.S.C. § 363(a) as follows:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

**3.** 11 U.S.C. § 552(b) reads as follows:

Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such

security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

**4.** Oklahoma law presently permits the enforceability of such assignments of rental income. *See* Okla.Stat. tit. 46 § 4 (effective Nov. 1, 1986). This new law is not retroactive and has no effect on the outcome of this case.

§ 544.[5] Section 544(a) provides that, upon the commencement of a bankruptcy case, a trustee (or, as in the instant case, a debtor-in-possession, *see* 11 U.S.C. § 1107(a)) has the rights and powers of both a hypothetical judicial lien creditor and a bona fide purchaser to avoid any transfer of the debtor's property if the conveyed interest was not perfected prepetition.

State law controls the issue of whether a property interest has been perfected. *See Butner*, 440 U.S. at 55, 99 S.Ct. at 918. Oklahoma is a lien theory state. *See Hart*, 43 P.2d at 449. Thus, the mortgagor remains the legal owner of the mortgaged property. *See Coursey v. Fairchild*, 436 P.2d 35, 38 (1967). The right of possession to the property (and, incidentally, to the rental income derived therefrom) "is dependent wholly upon the termination of a foreclosure action, except as to the statutory and equitable powers relating to the appointment of a receiver." *Hart*, 43 P.2d at 449. Although the Oklahoma courts have not written in terms of "perfection" of the interest of a mortgagee in the rental income drawn from the mortgaged premises, it is clear that, for purposes of this case, perfection is equivalent to the present right to receive the rental income. Therefore, a mortgagee perfects its interest when it either properly obtains possession of the property or obtains the appointment of a receiver.

VBF neither obtained possession of the property nor the appointment of a receiver prior to debtors filing their bankruptcy petition. Although it would appear, without more, that § 544(a) would permit debtors to retain the subject rental income, the Fifth Circuit has correctly stated the following:

The starting point to determine whether 11 U.S.C. § 544(a)(1) or (3) prevents the postpetition perfection of a security interest in rents is 11 U.S.C. § 362(a)(4). Under § 362(a)(4), any act to perfect any lien against property of the estate is stayed by the filing of a bankruptcy petition under 11 U.S.C. §§ 301–303. An exception to § 362(a)(4) exists, though, for acts taken "to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under" 11 U.S.C. § 546(b). 11 U.S.C. § 362(b)(3). Section 546(b) limits a trustee's § 544 avoiding powers if generally applicable law "permits perfection of an interest in property to be effective against an entity that acquires rights" in the property before the date of perfection. If that law requires that the property be seized or that an action be commenced to perfect the security interest and that action was not taken before the bankruptcy petition was filed, the interest is perfected by postpetition notice. 11 U.S.C. § 546(b).

For [the mortgagee] to escape having its [security interest in the rental income] voided under § 544(a), [state] law must permit a creditor such as [the mortgagee] to enforce a security interest in rents against an entity that acquired rights to the rents before the creditor perfected. That is, [state] law must authorize the creditor's perfection to relate back to a time before [the debtor] filed his bankruptcy petition and, as a debtor-in-possession, assumed the status of a lien creditor or bona fide purchaser.

*In re Casbeer*, 793 F.2d 1436, 1442–43 (5th Cir.1986) (footnotes omitted).

**5.** 11 U.S.C. § 544(a) reads as follows:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

At the time of the commencement of the bankruptcy case, VBF was entitled, under Oklahoma law, to have a receiver appointed, and to obtain the rental income that accrued from that point forward. VBF did not move to have a receiver appointed because of the relatively quick setting of the sheriff's sale by which it anticipated acquiring of property outright. Okla.Stat. tit. 12, § 1551(2) requires the mortgagee to demonstrate that the mortgaged property is in danger of being lost, removed, or materially injured or that the condition of the mortgage has not been performed and that the property is probably insufficient to discharge the mortgage debt. There is no dispute in this case that the installment notice is in default and that the value of the mortgaged property (approximately $1,250,000.00) was significantly below the amount of the outstanding indebtedness at the time the district court order was entered (approximately $1,700,000.00). Had VBF sought the prepetition appointment of a receiver under § 1551(2), VBF would have perfected its interest in the rental income.

VBF contends that its § 546(b) notice of claim to cash collateral is tantamount to a motion for the appointment of a receiver under Okla.Stat. tit. 12, § 1551(2) to which VBF would, absent the bankruptcy proceedings, be entitled to file. VBF asserts that this notice perfected its interest in the rental income and that this perfection related back to a prepetition time. This assertion is correct.

By its nature, the equitable lien on the rental income possessed by VBF relates back to a prepetition time, specifically, the time that the mortgage was executed.

> An equitable lien is a mere floating equity until a judgment or decree subjecting the property to the payment of a debt or claim is rendered, but even though not judicially recognized until a judgment declaring its existence, it relates back to the time it was created by the conduct of the parties.

51 Am.Jur.2d *Liens* § 22 (1970). *See also In re Stratton*, 106 B.R. 188, 193 (Bankr.E. D.Cal.1989); *Matter of Adametz*, 53 B.R. 299, 307 (Bankr.W.D.Wis.1985); *United States through Farmers Home Admin. v.*

*Redland*, 695 P.2d 1031, 1040 (Wyo.1985). *Accord Leyden v. Citicorp Indus. Bank*, 782 P.2d 6, 11 n. 10 (Colo.1989).

Although the perfection of VBF's interest in the rents relates back to the time of the execution of the mortgage for the purpose of § 546(b), the entitlement to the rental income does not relate back. Under Oklahoma law, a mortgagee is not entitled to recover the rental income prior to the appointment or recognition of a receiver. *See Hart*, 43 P.2d at 451. VBF's § 546(b) notice serves as the federal bankruptcy equivalent of the appointment or recognition of a receiver under Oklahoma law. VBF is entitled to the rental income from the subject property from that time forward. Furthermore, as the Fifth Circuit observed in *Casbeer*, 793 F.2d at 1443, this result comports with the direction in *Butner* that state law should be applied in determining the exact extent of a mortgagee's interest in rental income. This uniform application of state and federal law in this regard prevents "a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Butner*, 440 U.S. at 55, 99 S.Ct. at 918 *quoting Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961).

The judgment of the United States District Court for the Northern District of Oklahoma entered on February 19, 1988, is AFFIRMED.