UTE DISTRIBUTION CORPORATION, a Utah Corporation; Floyd and Helen Wilkerson; Henry Wopsock; Sam N. and Sandra K. Aloia; and Chris H. Denver, Plaintiffs–Appellants/Cross–Appellees,

v.

UNITED STATES of America, Defendant–Appellee/Cross–Appellant.

Nos. 90–4030, 90–4031.

United States Court of Appeals, Tenth Circuit.

July 16, 1991.

---

Max D. Wheeler (Michael D. Blackburn and David W. Steffensen, with him on the briefs), of Snow, Christensen & Martineau, Salt Lake City, Utah, for plaintiffs-appellants/cross-appellees.

Robert W. Metzler (Shirley D. Peterson, Asst. Atty. Gen., and Gary R. Allen and Richard Farber, Attys., with him on the briefs), Atty., Tax Div., Dept. of Justice,

Washington, D.C., for defendant-appellee/cross-appellant; Dee V. Benson, U.S. Atty., of counsel, Salt Lake City, Utah.

Before TACHA and SETH, Circuit Judges, and BRATTON, District Judge.*

TACHA, Circuit Judge.

Plaintiffs-appellants/cross-appellees Ute Distribution Corporation (UDC) and representative stockholders appeal the district court's ruling that UDC's distributions to its stockholders are subject to federal income tax. The government cross-appeals, claiming the district court erred in refusing to apply its decision retroactively. We exercise jurisdiction under 28 U.S.C. § 1291, reverse the district court's refund of income taxes collected on UDC distributions, and dismiss for lack of jurisdiction appellants' claim for declaratory judgment regarding future taxation of distributions.

## I. Background

During the 1950s, federal Indian policy underwent significant reform intended to reduce federal involvement in Indian affairs. In 1954, the 83rd Congress voted to terminate federal supervision over several Indian tribes.[1] Most of these termination acts contained similar provisions relating to the termination of federal supervision over the Indians' property. Typically, the tribal assets consisted of land and trust funds that were divided easily among the members· of the tribe.

Congress provided for the termination of the mixed-blood members of the Ute Indian Tribe of the Uintah and Ouray Reservation in Utah in the Ute Partition Act (UPA), 25 U.S.C. §§ 677–677aa. The mixed-bloods were tribe members who did not possess enough Indian or Ute Indian blood to fall within the fullblood class and those members who became mixed-bloods by choice under provisions of the UPA. See 25 U.S.C. § 677a(c). Unlike other Indian tribes terminated by Congress in 1954, a substantial portion of the Ute tribal assets consisted of subsurface oil, gas, and mineral rights (indivisible assets). These assets were not "susceptible to equitable and practical distribution." Id. § 677o (a). Congress therefore devised a method of distributing the proceeds of the indivisible assets over an extended period of time to the members of the terminated and non-terminated groups. Under the procedures outlined in the UPA, membership rolls were to be prepared for the fullblood and mixed-blood groups. After these rolls were published, the Tribal Business Committee, representing the fullbloods, and the authorized representative of the mixed-bloods were directed to distribute the divisible assets. The indivisible assets were to remain in government trust and be jointly managed by the Tribal Business Committee and the mixed-bloods' representative.

Pursuant to statutory authorization, the mixed-bloods organized the Affiliated Ute Citizens (AUC) and empowered its board of directors to act as their authorized representative. The mixed-bloods approved a plan for a division of the tribal assets, which later was adopted by the Tribal Business Committee and the AUC. Under this plan, most of the divisible assets were directly transferred to the mixed-bloods. With respect to the indivisible assets, the plan provided for the formation of a corporation responsible for managing these assets for the mixed-bloods. This corporation also would distribute income from the assets to its stockholders.

---

* The Honorable Howard C. Bratton, Senior District Judge for the United States District Court for the District of New Mexico, sitting by designation.

1. These tribes included: the Southern Paiutes of Utah (Act of Sept. 1, 1954, ch. 1207, 68 Stat. 1099 (repealed 1980) (formerly codified at 25 U.S.C. §§ 741–760); the Alabama and Coushatta Indians of Texas (Act of Aug. 23, 1954, ch. 831, 68 Stat. 768 (codified at 25 U.S.C. §§ 721–728); sixty-one tribes and bands in western Oregon

(Act of Aug. 13, 1954, ch. 773, 68 Stat. 724 (repealed 1977 with respect to Siletz Tribe) (codified as amended at 25 U.S.C. §§ 691–708); the Klamaths of Oregon (Act of Aug. 13, 1954, ch. 732, 68 Stat. 718 (repealed 1978 with respect to Modoc Tribe) (codified as amended at 25 U.S.C. §§ 564–564x); the Menominee Tribe of Wisconsin (Act of June 17, 1954, ch. 303, 68 Stat. 250 (repealed 1973) (formerly codified at 25 U.S.C. §§ 891–902); and the mixed-blood Utes of the Uintah and Ouray Reservations in Utah.

UDC was formed for these purposes in late 1958. Each mixed-blood listed on the rolls received ten shares of UDC stock. The stock was freely transferable, except members of the Ute Indian Tribe were given a right of first refusal until August 26, 1964. The termination of the mixed-blood members of the Ute Indian Tribe was completed when the Secretary of the Interior issued a proclamation, effective August 27, 1961, declaring "[a]ll statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable [to the mixed-bloods.]" 26 Fed. Reg. 8042 (1961). This proclamation did not purport to terminate the trust status of the indivisible assets.

For several years, UDC distributions to its stockholders were considered tax-exempt. In 1982, an IRS field agent asserted the probable tax status of the distributions based on section 677p of the UPA. This position was formalized in a letter by an IRS attorney that stated:

> [T]here is no basis for distinguishing distributable and nondistributable assets or property for the purposes of this exemption and that it was the intent of Congress in terminating federal supervision over mixed-blood trust assets to treat the mixed-bloods as non-Indians. Therefore, we believe that any distribution made to a mixed-blood after August 27, 1961 was and is subject to income tax.

Based on this reasoning, the IRS assessed taxes on all UDC distributions for tax year 1984.

While the original UDC stockholders were either mixed-bloods or fullbloods who elected to be terminated, the current stockholders include individuals who have inherited stock, mixed-blood and fullblood purchasers, and non-Indian purchasers of stock. Individual stockholders were selected to represent these different categories of stockholders in challenging the IRS decision to tax UDC distributions.[2] UDC and the representative stockholders exhausted their administrative remedies by unsuccessfully appealing the proposed assessments to the IRS Appeals Office. They paid the taxes, penalties, and interest and filed timely claims for refund, which were denied. Then they filed this suit in federal district court. UDC sought refunds of penalties and interest assessed and collected for tax years 1984 and 1985 and a declaratory judgment that it was not required to file 1099 information returns. The individual stockholders sought refunds of income taxes and interest assessed and collected for tax year 1984 and a declaratory judgment that the distributions are not subject to federal and state taxes.

Following a bench trial, the district court concluded:

> UDC's claim for refund of penalties paid for its failure to file 1099 returns for tax years 1984 and 1985 is granted, and refunds to UDC for those years is ordered. The claims of the individual plaintiffs seeking tax refunds for the year 1984 is also granted. However, commencing with tax year 1989, all distributions of property and income to stockholders of UDC are declared to be taxable, that is, "subject to the same taxes, State and Federal, as in the case of non-Indians."

*Ute Distribution Corp. v. United States,* 721 F.Supp. 1202, 1209 (D.Utah 1989). In the final order, the district court awarded refunds to UDC and the individual shareholders and granted the government a declaratory judgment. All parties filed timely notices of appeal.

## II.  Discussion

### A. *Jurisdiction Over Claims for Declaratory Judgment*

■ The government contends the district court should not have exercised jurisdiction over appellants' claims for declaratory judgment. Declaratory judgment ac-

---

**2.** Helen Wilkerson and Sandra Aloia are original mixed-blood stockholders of UDC. Henry Wopsock is a fullblood Ute Indian and an original stockholder of UDC who elected to be terminated from the tribe pursuant to the UPA. He acquired five additional shares of UDC stock by inheritance. Chris Denver is a non-Indian who purchased three shares of UDC stock. Floyd Wilkerson and Sam Aloia are also parties to this appeal. They filed joint tax returns with their wives and have been made parties for that reason.

tions relating to federal taxes are not permitted. 28 U.S.C. § 2201; *see also* 26 U.S.C. § 7421(a). The purpose of this prohibition is protection of the government's need to assess and collect taxes expeditiously without pre-enforcement judicial interference. *See South Carolina v. Regan,* 465 U.S. 367, 374–75, 104 S.Ct. 1107, 1112–13, 79 L.Ed.2d 372 (1984); *Bob Jones Univ. v. Simon,* 416 U.S. 725, 736–37, 94 S.Ct. 2038, 2045–46, 40 L.Ed.2d 496 (1974). An individual seeking to challenge the imposition of a tax must pursue his claim in a suit for refund. *See Lowrie v. United States,* 824 F.2d 827, 830 (10th Cir.1987).

Appellants pursued the proper procedure for challenging the imposition of the tax on UDC distributions. They paid the tax and then sought a refund. The district court, however, did not have jurisdiction to consider appellants' accompanying claims for declaratory judgment.

Additionally, the government argues the appellants have failed to join the appropriate state taxing authority as an indispensable party to their request for declaratory judgment. The government did not raise this issue below. We need not address this question because we dismiss appellants' claims for declaratory judgment. These claims are dismissed.

### B. *Taxation of UDC Distributions*

■ The government argues appellants are not entitled to appeal the district court's judgment because that court awarded the entire amount of refunds sought by appellants. When one party files a notice of appeal challenging the district court's decision, the opposing party is entitled to cross-appeal on all other issues litigated below. *See W.W. Windle Co. v. Commissioner,* 550 F.2d 43, 45 n. 2 (1st Cir.), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). The rule limiting issues raised on appeal merely restricts a party with a judgment in his favor from seeking appellate review of "findings he deems erroneous which are not necessary to support the decree." *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307

U.S. 241, 242, 59 S.Ct. 860, 860, 83 L.Ed. 1263 (1939).

Here, the government commenced this appeal by filing a notice of appeal challenging the district court's prospective application of its ruling. Appellants may challenge the district court's ruling on the taxation of distributions because it is an integral part of the judgment. The issue of statutory interpretation we face here pursuant to section 1291 appellate jurisdiction is unlike the situation this court faces in reviewing issues unnecessary to a final decision of the tax court pursuant to 26 U.S.C. § 7482(a). *See, e.g., Van Roekel v. Commissioner,* 905 F.2d 80 (5th Cir.1990); *W.W. Windle Co.,* 550 F.2d 43.

■ To determine whether the district court properly ordered the requested refunds, we must first consider whether the court correctly interpreted the statute to subject UDC distributions to federal income tax. Section 677p of the UPA addresses the tax status of property distributed to the mixed-bloods. This provision states in part:

> No distribution of the assets made under the provisions of this subchapter shall be subject to any Federal or State income tax.... Property distributed to the mixed-blood group pursuant to the terms of this subchapter shall be exempt from property taxes for a period of seven years from August 27, 1954, unless the original distributee parts with title thereto.... After seven years from August 27, 1954, all property distributed to the mixed-blood members of the tribe under the provisions of this subchapter, and all income derived therefrom by the individual, corporation, or other legal entity, shall be subject to the same taxes, State and Federal, as in the case of non-Indians; except that [the UDC] shall not be subject to corporate income taxes.

We review de novo the question whether the UDC distributions are taxable under this provision. *Absentee Shawnee Tribe of Indians v. State of Kansas,* 862 F.2d 1415, 1416 (10th Cir.1988), *cert. denied,* 490 U.S. 1046, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989).

When statutory language is unambiguous, the plain language controls except in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Canons directing a court to construe a statute for the benefit of a particular group, such as Indians, only apply when there are doubtful expressions or the statute is silent on the issue. *See United States v. Felter*, 752 F.2d 1505, 1511 (10th Cir.1985); *United States v. Anderson*, 625 F.2d 910, 913 (9th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1367, 67 L.Ed.2d 347 (1981). Further, we do not defer to an agency interpretation of a statute when that statute is not ambiguous. *Board of Governors of the Fed. Reserve System v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 685–86, 88 L.Ed.2d 691 (1986); *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

Congress expressed an intent in section 677p to make distributions received after a specific date subject to federal income tax. Although the provision indicates initial distributions are tax-exempt, the provision also states that this limited tax exemption expires on August 27, 1961. According to the plain language of section 677p, UDC shareholders must pay federal income tax on all distributions received after August 27, 1961.

We must follow the unambiguous language of the statute unless the legislative history reveals a clear contrary intent that UDC distributions are not taxable. The legislative history of the 1954 enactment of the UPA does not address the tax status of distributions of income from the indivisible assets to the mixed-bloods. *See* 1954 U.S.Code Cong. & Admin.News 3352, 3355. In 1956, Congress amended section 677p of the UPA to create a corporate income tax exemption for the UDC. The House and Senate Reports state this amendment was intended "to preserve the tax-exempt status of the distributions from the trust funds held by the United States Government on the principle that the corporation would merely act as a conduit for the transmission of funds received from the Government to the members of the mixed-blood group." H.R.Rep. No. 2744, 84th Cong., 2d Sess. 2 (1956); S.Rep. No. 2432, 84th Cong., 2d Sess. 2 (1956).

Included in these reports is a letter from the Assistant Secretary of the Interior to the chairman of the Senate committee considering the amendment. This letter states:

> The present act provides that the initial distribution of tribal assets (except interest earned on funds in the United States Treasury) to the members of the mixed-blood group shall not be subject to income taxes. This is proper because the distribution represents an original tribal capital asset.... The corporation thus represents merely an interim step pending the ultimate division of the undivided assets. Inasmuch as the ultimate division and distribution of those assets will not be subject to income tax, we believe that it is proper to exempt the interim corporation that will be organized principally for the convenience of the Government from corporate income taxes.

H.R.Rep. No. 2744, 84th Cong., 2d Sess. 3 (1956); S.Rep. No. 2432, 84th Cong., 2d Sess. 3 (1956).

The language contained in these reports and the Department of Interior letter only refer to a limited exemption for distributions of assets. When these documents were prepared in 1956, all distributions to the mixed-bloods were tax-exempt under section 677p, and they did not lose this status until 1961. By 1961, the mixed-blood members had received their distribution of shares of stock in UDC tax-free. Nothing in the legislative history contradicts the plain language of section 677p indicating income derived from this stock is subject to federal income taxation after August 27, 1961.

Further, section 677p reflects the general policy of enabling Indians to participate fully in the rights and responsibilities of

United States citizens. Congress expressed this policy as follows:

[I]t is the policy of Congress, as rapidly as possible to make the Indians ... subject to the same laws and entitled to the same privileges and responsibilities as are applicable to other citizens of the United States, to end their status as wards of the United States and to grant them all of the rights and prerogatives pertaining to American citizenship....

H.R.Con.Res. 108, 83d Cong., 1st Sess. (1954). For the mixed-bloods, the application of this policy in section 677p would require them to assume the responsibility of paying taxes on all income received after their membership in a distinct Indian tribe was terminated. The district court properly concluded UDC income distributions made after August 27, 1961 are subject to federal income tax.

Appellants contend section 677p exempts all UDC distributions from federal income tax whether they are made before or after August 27, 1961. They contend UDC distributions are exempt from federal income tax because the general income tax exemption found in the first sentence is not modified as it relates to income distributions derived from the indivisible assets. Although the statute provides that property distributed to the mixed bloods shall be subject to the same state and federal taxes imposed on non-Indians after 1961, appellants argue the phrase "property distributed" only refers to property that previously had been distributed tax-free. This tortured construction of section 677p is contrary to the statute's plain language. Section 677p's tax exemption expires on August 27, 1961 with respect to "all property distributed;" the provision does not state the exemption expires on that date only as to property previously distributed tax free.

Appellants also argue the legislative history of other termination acts enacted during the 1950s reveals an intent that distributions to Indians remain tax-free in perpetuity. Although the tax provisions of other acts may exempt the distribution of tribal assets from federal taxation, *see, e.g.,* 25 U.S.C. § 564j (Klamaths of Oregon); 25 U.S.C. § 749 (Paiutes of Utah); 25 U.S.C. § 699 (sixty tribes and bands in western Oregon); 25 U.S.C. § 898 (Menominee Tribe of Wisconsin) (repealed 1973), the tax provision in the UPA differs from those in the other termination acts. Section 677p provides that distributions made to the mixed-bloods prior to their termination shall be tax-exempt, while those subsequently made are subject to federal and state taxes. As noted previously, the termination of the Ute Indians involved the unique problem of distributing indivisible assets. In enacting section 677p, Congress was faced with the problem of partitioning the tribal property between the terminated and non-terminated groups. This provision with its limited exception represents Congress' resolution of the taxation issues involved in the distribution of indivisible tribal assets.

### C. *Taxpayers' Right to Refunds*

■ Although the district court properly determined the plain language of section 677p made the distributions subject to federal income tax, the court ordered refunds for the 1984 tax year, purporting to apply its decision only prospectively. The court stated:

Although today this court has ruled that UDC distributions are taxable, as a matter of fundamental fairness this ruling shall apply prospectively only. That is, the taxable status of UDC distributions as applied to individual shareholders shall commence with the tax year 1989.... Plaintiffs paid the 1984 assessments under protest and in spite of the longstanding position of the Department of the Interior that such distributions are nontaxable. Under such circumstances the individual plaintiffs and other UDC stockholders are not charged with notice of the taxable status of such distributions prior to this decision.

*Ute Distribution Corp.,* 721 F.Supp. at 1208–09 n. 23.

Section 677p unambiguously imposes a duty on UDC stockholders to pay federal income tax on distributions received after August 27, 1961. This is not a case where

the district court was free to determine whether to apply its decision retroactively or prospectively only. The court was bound, as we are, by the specific statutory mandate establishing the date after which taxes will be imposed. Notwithstanding the long period of IRS forbearance from collection of taxes, the statute is clear regarding the legal liability for taxes on the interests involved here beginning on August 27, 1961.

There is nothing fundamentally unfair about requiring these stockholders to satisfy this obligation for the 1984 tax year. Section 677p granted the mixed-bloods a tax exemption for a limited period of time. Congress declared the mixed-bloods would assume the privileges and duties of citizenship, including the payment of federal income taxes, after August 27, 1961. The district court erred in applying its decision only to future tax years and in granting the refunds.

We REVERSE the district court's award of refunds of income taxes assessed and collected on the UDC distributions and DISMISS the claims for declaratory judgment. The district court's other rulings have not been challenged on appeal. We REMAND to the district court for entry of an order consistent with this opinion.