## In re Marcus Wayne VANN and Stephanie Joy Vann, Debtors.

### Civ. No. 94–1158–PFK.

United States District Court, D. Kansas.

Jan. 11, 1995.

Donald B. Clark, Wichita, KS, for debtors.

Christopher O'Brien of Robbins, Tinker, Smith & Tinker, Wichita, KS, for appellee.

### MEMORANDUM AND ORDER
PATRICK F. KELLY, Chief Judge.

This matter comes before the court on the appeal of the debtors, Marcus Wayne Vann and Stephanie Joy Vann (Vanns), from the bankruptcy court's order of April 11, 1994. In that order, the court denied the debtors' motion to avoid creditor Century Finance Company's lien on a 1980 Ford pickup truck, attached snow plow, and 16–foot trailer (hereinafter referred to collectively as equipment).

The Vanns executed a security agreement and note in November 1991 that granted Century Finance a nonpossessory lien on the equipment. The parties agreed the Vanns would retain possession of the collateral. The security interest was perfected properly.

After the debtors defaulted on payment, Century Finance instituted action in state court and obtained a judgment granting it possession of the equipment. On August 2, 1993, Century Finance took possession of the equipment without the Vanns' consent or voluntary relinquishment.

On August 11, the debtors filed for bankruptcy under Chapter 7. On October 25, 1993, pursuant to the Vanns' motion, the bankruptcy court converted the case to a Chapter 13 proceeding. The court subsequently granted the debtors' motion for turnover of the equipment[1] and denied their motion to avoid Century Finance's lien. The Vanns appeal the latter ruling. This court finds no hearing is necessary, *see* D.Kan. Rules 206(d), 702, 710(a)(7), and is ready to rule.

In an appeal taken from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). The district court may affirm, reverse, or modify the bankruptcy court's ruling or remand the case for further proceedings. Fed.R.Bankr.P. 8013 (1994 Supp.). The district court may not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *Virginia Beach Fed. Sav. & Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir.1990); *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel),* 798 F.2d 396, 399 (10th Cir.1986); *see also* Fed. R.Bankr.P. 8013 (1994 Supp.). The district court, however, reviews the bankruptcy court's legal determinations *de novo. Wood,* 901 F.2d at 851; *Branding Iron Motel,* 798 F.2d at 399–400. The bankruptcy court's construction and application of the Bankruptcy Code is a legal determination subject to *de novo* review. *See Webb v. General Motors*

*Acceptance Corp. (In re Hesser),* 984 F.2d 345, 348 (10th Cir.1993).

■ The issue before this court concerns construction of 11 U.S.C. § 522(f), which provides in pertinent part:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> . . . .
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> . . . .
>
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; . . .

*See Owen v. Owen,* 500 U.S. 305, 310–11, 111 S.Ct. 1833, 1836–37, 114 L.Ed.2d 350 (1991) ("To determine the application of § 522(f) . . . ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he would have been entitled but for the lien itself."). The parties do not dispute the equipment is a tool of the debtors' trade, a snow plowing and lawn care business. What is at issue is whether the Vanns' loss of possession prior to filing for bankruptcy and applying for lien avoidance affects their ability to claim this exemption.

The bankruptcy court found that the creditor's interest is *possessory* and that the express language of § 522(f) states lien avoidance is possible only for security interests that are *nonpossessory.* Citing *Ferguson v. Central Nat'l Bank (In re Ferguson),* 67 B.R. 246 (D.Kan.1986), the court reasoned that "[o]nce the creditor has reduced . . . the collateral to its possession, lien avoidance is no longer permitted." *In re Vann,* 166 B.R. 167, 168 (Bankr.D.Kan.1994). The bankruptcy court refused to consider legislative histo-

---

**1.** The bankruptcy court concluded the equipment was necessary for the Vanns' continued operation of their snow removal and lawn care business under their Chapter 13 plan. The court ordered the debtors to pay $150.00 monthly to Century Finance beginning January 15, 1994 and

to furnish Century Finance with proof of adequate insurance coverage and proof of payment for such coverage. After the Vanns comply with the court order, Century Finance is to relinquish the equipment to the debtors.

ry to ascertain congressional intent or the statute's purpose, stating such consideration is proper only if the statute is ambiguous. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989); *Ute Distribution Corp. v. United States*, 938 F.2d 1157, 1162 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2273, 119 L.Ed.2d 200 (1992). The court determined the language of § 522(f) unambiguously permits the debtor to avoid certain security interests, provided the debtor maintains possession of the collateral. The court rejected the cases the Vanns cited, *Meadows v. Farmers & Merchants Nat'l Bank (In re Meadows)*, 75 B.R. 357 (W.D.Va. 1987), and *In re Schultz*, 101 B.R. 68 (Bankr. N.D.Iowa 1989), reasoning these "courts reached beyond the clear meaning of the statute to give collateral back to the debtor under the theory that somehow the purpose of the statute was to frustrate a secured creditor's rights to repossess the property." *In re Vann*, 166 B.R. at 169. The bankruptcy court maintained it was following the "overwhelming" majority position. *See In re Ferguson*, 67 B.R. 246; *In re Sanders*, 61 B.R. 381 (Bankr.D.Kan.1986); *see also In re Shepler*, 78 B.R. 217 (Bankr.W.D.Wis.1987). The court acknowledged *Norton Bankruptcy Law and Practice 2d* § 46:24 n. 12 (1994), states otherwise, but concluded *Norton* cited an equal number of cases for both positions. The court concluded by characterizing the Vanns' argument as bordering on frivolous.

The debtors contend the bankruptcy court's reliance on *In re Ferguson* is misplaced. Pursuant to 11 U.S.C. § 522(b), the *Ferguson* debtor attempted to recover and exempt household goods the creditor had repossessed prior to the debtor's bankruptcy filing. At the time the case was filed, § 522(b) permitted a debtor to select Bankruptcy Code exemptions unless state law prohibited the selection. K.S.A. § 60–2312 prohibited individual debtors from selecting federal exemptions pursuant to § 522(b)(1) and required such debtors to select Kansas statu-

tory exemptions.[2] The pertinent Kansas exemption provided in relevant part:

> Every person residing in this state shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property:
>
> (a) The furnishings, equipment and supplies, including food, fuel and clothing, for the person which is in the person's present possession and is reasonably necessary at the principal resident of the person for a period of one year.

K.S.A. § 60–2304 (1993 Supp.). The bankruptcy court concluded the debtor's "legal interest" constituted "constructive possession" and was sufficient to satisfy the "present possession" requirement of § 60–2304(a).

On appeal, Judge Saffels disagreed. The judge disputed, among other things, the bankruptcy court's reliance on *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Judge Saffels discussed the policy and scope distinctions underlying an individual bankruptcy, such as the Chapter 7 filing in *In re Ferguson*, and a reorganization bankruptcy, such as the Chapter 11 filing in *Whiting Pools*. For example, with regard to a reorganization bankruptcy, " 'Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." ... Thus, to facilitate the rehabilitation of the debtor's business, all of the debtor's property must be included in the reorganization estate.' " 67 B.R. at 252 (quoting *Whiting Pools*, 462 U.S. at 203, 103 S.Ct. at 2313).

█ This court finds the bankruptcy court's reliance upon *In re Ferguson* suspect. *Ferguson* and the case at bar construe different statutes; K.S.A. § 60–2304(a) and 11 U.S.C. § 522(f) do not employ identical language. Unlike 11 U.S.C. § 522(f), the Kansas statute explicitly requires household goods to be in the debtor's present possession. The terms "present possession" and "possessory security interest" do not neces-

<hr>

2. That statute has been amended since the *Ferguson* decision and specifies that "[a]n individual debtor under the federal bankruptcy reform act of 1978 may exempt, in addition to any other

exemptions allowed under state law, any property listed in subsection (d)(10) of section 522 of such federal act." K.S.A. § 60–2312(b) (1993 Supp.).

sarily have the same meaning. Even the Kansas equivalent of the federal tools of the trade exemption, K.S.A. § 60–2304(e) (1994 Supp.), does not explicitly require the tools of the debtor's trade to be in the debtor's present possession.

The bankruptcy court also cited *In re Sanders* and *In re Shepler*. The issue in *Sanders* concerned whether the creditor's lien on tools that had been repossessed was a nonpossessory or a possessory security interest. The *Sanders* court's research revealed two cases on point, *McFarland v. Farmers Production Credit Ass'n (In re McFarland)*, 38 B.R. 370 (Bankr.N.D.Iowa 1983), *aff'd*, 38 B.R. 374 (N.D.Iowa 1984), and *Wood v. Provident Fin. Co. (In re Wood)*, 13 B.R. 245 (Bankr.E.D.N.C.1981), in which the courts "held that the liens were nonpossessory because the creditor did not obtain possession by voluntary agreement." 61 B.R. at 383. Judge Pusateri rejected this reasoning, finding "the courts did not consider the standard security agreement provision giving creditors the right to take possession upon default." *Id.* The judge also repudiated the debtor's argument that a possessory security interest only exists if the creditor takes possession at the commencement of the transaction, such as with a pledge. Judge Pusateri concluded a security interest that had been nonpossessory could become possessory because "[a] creditor's right and duties with respect to collateral in its possession are the same whether the creditor had possession from the start, or took possession upon default." *Id.* at 383–84; *see* K.S.A. § 84–9–207, Official U.C.C. Comment 4 ("This Section applies when the secured party has possession of the collateral before default, as a pledgee, and also when he has taken possession of the

collateral after default."); *see also* K.S.A. § 84–9–501(1) (default procedure).[3]

In *Shepler*, analysis began with the acknowledgement that the Bankruptcy Code does not define the term "nonpossessory security interest." The court recognized the *Wood* and *McFarland* courts held "that it is the original nature of a security interest at the time it attaches that determines whether it is a 'nonpossessory' security interest within the meaning of § 522(f)." 78 B.R. at 220. The *Shepler* court rejected this reasoning in favor of the *Sanders* rationale.

■ The *Sanders* court's reliance upon Official U.C.C. Comment 4 to K.S.A. § 84–9–207, which pertains to the secured party's rights and duties in situations in which the secured party has possession of the collateral,[4] is questionable. Federal law generally defines terms contained in federal statutes, particularly if the federal statutory system, such as bankruptcy, is to be applied uniformly nationwide. *Farm Credit Bank of Wichita v. Hodgson (In re Hodgson)*, 167 B.R. 945, 949 (D.Kan.1994). If Congress intended state law to give content to a statutory term, "a federal court may properly use state law to fill the interstices within a federal legislative scheme." *Id.* The bankruptcy statutes are to be applied uniformly nationwide; however, the federal bankruptcy system also relies upon state law. "While Kansas law controls what the debtors may claim as tools of the trade, federal law controls the lien avoidance issue." *In re Kane*, 167 B.R. 224, 225 (Bankr.D.Kan.1993); *see David Dorsey Distributing, Inc. v. Sanders (In re Sanders)*, 39 F.3d 258, 260 (10th Cir.1994).

---

**3.** The statute provides:

When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in section 84–9–207.

**4.** Subsection (1) enumerates the secured party's duty to preserve the collateral; subsection (2) charges to the debtor reasonable expenses incurred in preserving the collateral and accidental loss; subsection (3) charges to the secured party any loss caused by that party's failure to satisfy its statutory obligations; and subsection (4) permits the secured party to operate or use the collateral in order to preserve the collateral, in furtherance of a court order, or in accordance with provisions of the security agreement.

■ Contrary to the bankruptcy court's statement, there is no "overwhelming" majority construction of the meaning of "nonpossessory security interest" for purposes of § 522(f). This court also disagrees with the bankruptcy court's reading of footnote 12 found at *Norton Bankruptcy Law and Practice 2d* § 46:24 (1994), namely, that an equal number of cases are cited for both positions. Footnote 12 states:

Most courts hold that a security interest does not become possessory, and thus unavoidable, when the creditor take possession of collateral following debtor's default. *Re Meadows,* 75 B.R. 357 (W.D.Va.1987); *Re Schultz,* 101 B.R. 68 ... (Bankr. N.D.Iowa 1989) (security interest remains nonpossessory when creditor repossesses as allowed by security agreement because the parties did not intend a possessory interest); *Re Challinor,* 79 B.R. 19 ... (Bankr.D.Mont.1987) (security interest is nonpossessory when the security agreement did not include repossession among listed remedies and the creditor took possession by execution upon a judicial lien). Contra *Re Shepler,* 78 B.R. 217 ... (Bankr.W.D.Wis.1987); *Re Sanders,* 61 B.R. 381 ... (Bankr.D.Kan.1986).

The *In re Meadows* court noted the Bankruptcy Code does not define "nonpossessory interest" and then turned to legislative history. Section 522(f) was legislated under the Bankruptcy Reform Act of 1978. Pub.L. 95–598, 92 Stat. 2549, 2589 (1978). "Congress enacted § 522(f) with the broad purpose of protecting the debtor's exempt property." *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991). The House Report on the bill includes the following remarks regarding § 522(f):

The exemptions in the bill include ... tools of the trade.

. . . .

In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property.... *The first right allows the debtor to undo the actions of creditors that* bring legal action against the debtor shortly before bankruptcy. *Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions.* The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage.

H.R.Rep. No. 95–595, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6087–88 (emphasis added). Based upon this legislative history, the *Meadows* court concluded "the proper analysis under § 522(f) is simply to determine how the lien initially attached and became enforceable against the debtor." 75 B.R. at 360. The court reasoned that to allow creditors to acquire a possessory interest through repossession of the collateral would frustrate the purposes underlying § 522(f), and would upset the balance Congress struck between creditors' and debtors' interests. The *Meadows* court commented that other courts addressing the question had reached the same conclusion. *See In re McFarland,* 38 B.R. at 373; *In re Wood,* 13 B.R. at 247.

Citing N.C.Gen.Stat. § 25–9–203 (attachment and enforceability of security interest; proceeds; formal requisites), the *Wood* court found "[a] creditor may have a possessory security interest in property only if, pursuant to the agreement between the debtor and creditor, it is agreed that the creditor will have possession of the collateral." 13 B.R. at 247. The *McFarland* court agreed with the *Wood* court's resolution of the issue, finding identical the Iowa equivalent of the North Carolina statute, Iowa Code § 554.9203(1) (1983). The Kansas equivalent, K.S.A. § 84–9–203(1) (1994 Supp.), also is virtually identical.

The *In re Schultz* court also noted the Bankruptcy Code fails to define possessory

or nonpossessory. The court further commented:

> There is little Congressional history as to why the "nonpossessory" requirement was placed in 11 U.S.C. § 522(f)(2)(B). It was not in the House version of the proposed Act. However, it was in the Senate version. A compromise was reached between the House and Senate containing the "nonpossessory" addition to § 522(f)(2). This court could find no explanation for the addition. One treatise explains that "[t]he possessory exclusion protects the pawnbroker's lien; ..." 1 *Norton Bankruptcy Law and Practice* § 26.42 at 33 (1981).
>
> This court believes that 11 U.S.C. § 522(f)(2)(B) was intended to permit lien avoidance only on those items of collateral necessary for debtor's post-petition fresh start. Those items which a debtor relinquishes possession of to obtain a loan are ostensibly not necessary pre-petition or post-petition to the debtor's household, health, or trade. They were originally or by subsequent agreement voluntarily transferred as security to the secured party's possession.
>
> Therefore, in order to create a possessory interest not avoidable by 11 U.S.C. § 522(f)(2)(B), there must be an agreement between the parties that the secured party will possess the collateral and pursuant to that agreement, the secured party must possess the collateral. Possession must be a function of the agreement. Possession may be by the original security agreement or by a subsequent agreement.
>
> Where the parties originally enter into a nonpossessory security agreement perfected by filing, a clause giving the secured party right to possess the collateral upon default does not render the security interest possessory within the meaning of 11 U.S.C. § 522(f)(2)(B) where the secured party repossesses the equipment by self-help or by judicial action.

101 B.R. at 71.

The *In re Challinor* court rejected the creditor's argument that it had a possessory interest in the collateral. The court reasoned that the creditor took possession of the collateral by execution upon a judicial lien, and that the security agreement provided the creditor with a remedy of suit, not repossession. Here, the security agreement provided Century Finance with the remedy of repossession.

■ This court is not convinced "nonpossessory security interest" is unambiguous. Even if the term is not ambiguous, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair Enterprises, Inc.*, 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *see Ute Distribution Corp*, 938 F.2d at 1162 (quoting *Griffin*, 458 U.S. at 571, 102 S.Ct. at 3250).

> One factor supporting the view that Congress intended § 522(f)(1) to thwart a rush to the courthouse is Congress' contemporaneous elimination of § 67 of the 1898 Bankruptcy Act, 30 Stat. 564. Prior to its repeal, § 67(a) invalidated any lien obtained on an exempt interest of an insolvent debtor within four months of the bankruptcy filing. The Bankruptcy Reform Act eliminated the insolvency and timing requirements.

*Farrey*, 500 U.S. at 298, 111 S.Ct. at 1830.

■ This appears to be one of those rare cases. Legislative history makes clear that the decisive factor in determining application of 11 U.S.C. § 522(f) is not who wins the race to the courthouse. This court also finds persuasive the reasoning and conclusions of the *In re Meadows* and *In re Schultz* decisions.

IT IS ACCORDINGLY ORDERED this 11th day of January, 1995, that the bankruptcy court's order of April 11, 1994 is reversed, and this case is remanded for further proceedings consistent with this opinion.